## C. A. BAY v. OKLAHOMA SOUTHERN GAS, OIL AND MINING COMPANY. et al.

(Filed September 10, 1903.)

1. MINING CLAIMS—Entering Oil Lands. Public lands of the United States subject to settlement and occupancy, containing petroleum or other mineral oils, chiefly valuable therefor, may be entered and patent obtained thereto under the laws of the United States relating to placer mining claims.

2. COMANCHE, ETC., LANDS—How Classed. The lands acquired by treaty from the Comanche, Kiowa and Apache Indian tribes in Oklahoma, were classed as agricultural lands, but subject to the mineral laws of the United States.

3. MINING CLAIMS—Character of Lands—How Determined—Possession—Injunction. It is only when lands containing petroleum or other mineral oils are chiefly valuable for the mineral oils, that such lands are subject to entry and location as placer mining claims, and whether such land is chiefly valuable for its mineral oils is a question of fact to be proved by the person alleging its mineral character, as against the homestead entry, and such question of fact is to be heard and determined by the land department. Until such time the court may preserve the possessory rights of the legal occupant against continuous trespassing by injunction.

4. SAME—Comanche Lands—When Subject to Settlement. Under the laws of congress and proclamation of the president opening said lands to settlement, none other than one who had been awarded the right to make homestead entry after August 6, 1901, was permitted to occupy any of said lands for the purpose of discovering oils or making mineral locations until after October 5, 1901, and any entry or occupying prior to said time could confer no rights on the claimant.

5. SAME—Valid Location. It is a condition precedent to the location of a mining claim that a discovery must be made, and in case of petroleum or mineral oils, the vein or deposit from which the oil is drawn must be discovered before a valid location can be made.

6. SAME—Transfer of Location. One who discovers mineral signs or indications may assign and transfer his prospective discovery to one who may follow it up and make such discovery as to entitle the assignee to a valid location and finally a patent.

7. SAME—Discovery—Surface Indications not Sufficient. Mere surface indications of mineral oils do not constitute a discovery, and are not sufficient upon which to base a location.

8. SAME—Homestead Entry—How Divested by Mineral Claimant. One who has a valid homestead entry upon lands classed as agricul-

tural, but subject to the mineral laws, may be divested of his right by a showing that the land is more valuable for mineral than agricultural purposes, if made at any time before final proof and payment are made and final receipt issued.

9. SAME—Possession—Homestead Entryman. The homestead entryman is entitled to exclusive possession as against all adverse claimants except one having a valid, prior, equal or superior right. A person qualified to make a mining location and having a valid prior mining settlement in good faith or location, has such right of possession as against the homestead entryman. But a contestant for a mining claim or location is not entitled to either joint or adverse possession as against the homestead entryman.

10. SAME—Locator "Sooner." One who attempted to locate a placer mining claim containing petroleum on August 8th, 1901, was acting in violation of law, and can acquire no rights under such attempted location as against one having a homestead entry, nor can the assignee of such wrongdoer acquire any valid rights.

11. INJUNCTION—Temporary—When not Dissolved. Record examined and Held, the defendants were not entitled to have the temporary injunction dissolved.

(Syllabus by the Court.)

*Error from order in Chambers, Comanche County; by F. E. Gillette, Trial Judge.*

*Parmenter & Myers,* for plaintiff in error.

No appearance for defendant in error.

Opinion of the court by

BURFORD, C. J.:    This is a petition in error for the purpose of having reviewed an order of the judge of the seventh judicial district, dissolving a temporary injunction. The cause is pending in the district court of Comanche county, and so far as we are advised, is not yet disposed of.

On July 17, 1902, the plaintiff in error, who was the plaintiff below, secured from the probate judge of Comanche county, in the absence of the district judge, a temporary injunction, restraining the defendants in error from trespassing upon certain lands occupied as a homestead.   On August

20, 1902, on motion of the defendants in error, the judge of the district court in his chambers at Anadarko, dissolved said temporary injunction, to which the plaintiff in error excepted, and on September 8, filed the petition in error in this court.

The defendants in error have not favored us with a brief, and we are left to the record alone to ascertain the grounds for the action of the trial court. In cases of this character, where the defendant in error has sought and secured the favorable action of the trial court in relieving him from the operation of a prohibitory order, and the adverse party brings the case to this court for review, and the defendant in error does not manifest a sufficient interest in the results to brief the case for the benefit of the reviewing court, we shall not go into any critical examination of the record, or extensive investigation of authorities in order to sustain the judgment appealed from. If the plaintiff in error makes a *prima facie* showing of error, and the case is one affecting no public interests, we will reverse the judgment.

The record discloses this state of facts: On the 15th day of November, 1901, the plaintiff in error, C. A. Bay, made homestead entry for the southwest quarter of section seven, township thirteen, north, range eleven, west, in Comanche county, Oklahoma, and since that date has been in the peaceable possession of the same. On July 17, 1902, Bay brought an action against the defendants in error, The Oklahoma Southern Gas, Oil & Mining Company, a corporation organized under the laws of Oklahoma, and J. M. Patterson, C. I. Bodine and B. F. Baltzeger,, to restrain them from trespassing upon said land. He alleges that these defendants wrongfully, forcibly and illegally are entering upon his said land without his consent and over his protest, and are drilling for oil, gas and other minerals, and are continuously entering up-

on said land with machinery, and boring and drilling in the ground, and are threatening to make said acts continuous, and that he has no adequate remedy at law, and to prevent a multiplicity of suits, he prays an injunction, etc. In the absence of the district judge, he procured from the probate judge a temporary injunction, restraining the defendants from further trespassing upon said land until the further order of the court. On August 20, 1902, the defendants in error appeared before the judge of the district court in chambers at Anadarko, and on motion and hearing secured an order of the judge dissolving said temporary injunction, and the case is here on error for review of that order.

At the date of the hearing, the defendants had not filed an answer, and no issues were made. In support of the motion to dissolve the temporary injunction, the defendants in error filed the affidavits of John M. Patterson, secretary and general manager of the corporation, and B. F. Baltzeger, an employe of the company. In Patterson's affidavit he states that on August 8, 1901, the tract of land in controversy was located and staked under the placer mining laws of the United States, by an association of eight persons consisting of Thomas Brown, James Finton, Frank Abell, Geo. Conoman, Richard Fessant, Laura Thrall, Charles H. Wykoff and B. F. Brown, and that he, Patterson, was present when said land was staked, and that oil was discovered on said tract on the 7th day of August by said locators, and that said tract is a part of the property of the defendant corporation, and that said locators are stockholders in the company.

In the affidavit of Baltzeger, he states that he is the owner of a well drill, and that on July 12, 1902, the corporation employed him to drill a well for gas and oil. That on July

17, 1902, he moved his drill onto said land, and drilled a well 43 feet deep, when he struck a vein of oil, and took out one and one-half gallons at one dip with the well bucket, at which time he was served with the temporary injunction, and has done no more work on the land. The defendants also introduced in evidence a notice purporting to have been given on July 9, 1901, by the so called locators, in which they claim this tract as a placer mining claim, and which notice was filed with the register of deeds of Comanche county, August 26, 1901.

In opposition to the motion to dissolve the temporary injunction, the plaintiff filed his own and eight other affidavits. These affidavits all state positively that they have examined the land in question carefully, and that it is all prairie land covered with sod and grass, unbroken at the time of entry, and that there is no oil, seepage or seeps or indications of oil on said land. Bay also states that he examined the surface indications carefully before making his homestead entry, and that there were no indications of oil or other minerals on the land. These affidavits are all in the record, and upon this record the judge who heard the motion, dissolved the temporary injunction.

The right to locate oil lands under the placer mining laws is given by act of February 11, 1897, 29 U. S. stat, 526, and is as follows: "That any person authorized to enter lands under the mining laws of the United States may enter and obtain patents to lands containing petroleum or other mineral oils and chiefly valuable therefor, under the provisions of the laws relating to placer mineral claims." This act refers us to the law relating to placer claims. Sec. 2329, rev. stat. U. S., is as follows: "Claims usually called placers, includ-

430 SUPREME COURT OF OKLAHOMA.

Bay v. Okla. Southern Gas, Oil & Min. Co. *et al.*

ing all forms of deposit, excepting veins of quartz or other rock in place, shall be subject to entry and patent under like circumstances and conditions and upon similar proceedings as are provided for vein or lode claims, but where the lands have been previously surveyed by the United States, the entry in its exterior limits shall conform to the legal subdivisions of the public lands."

Sec. 2331 limits the location of placer mining claims to not more than 20 acres for each individual claimant on surveyed lands, and sec. 2330 limits the aggregate that may be taken by any number of associated persons to 160 acres. On the subject of mineral lands generally, sec. 2318 reserves all lands valuable for minerals from sale, unless otherwise expressly directed by law.

Sec. 2319 declares all valuable mineral deposits in lands belonging to the United States free and open to exploration and purchase, and the lands in which they are found to occupation and purchase according to local rules of miners in the several mining districts, so far as the same are applicable, and not inconsistent with the laws of the United States.

Sec. 2320 forbids that the location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located.

Sec. 2322 gives the locators, their heirs and assigns, so long as they comply with the laws, rules and regulations, the exclusive possession and enjoyment of all the surface included within the lines of their locations.

Sec. 2302 specifically exempts all mineral lands from entry and settlement under the homestead laws.

The territory has enacted no laws governing mineral claims, and if a mining district has made any rules and regu-

lations, they have been neither pleaded or proved, and we have no knowledge on the subject.

By congressional enactment in 1891, all lands in Oklahoma were declared to be agricultural lands, and proof of non-mineral character was not required, and this law has governed the settlement of all the lands in Oklahoma since that date except the lands acquired by treaty from the Comanche, Kiowa and Apache tribes of Indians. The act of congress approved June 6, 1900, 31 U. S. stat. p. 680, provides:

"That should any of said lands allotted to said Indians or opened to settlement under this act, contain valuable mineral deposits, such mineral deposits shall be open to location and entry under the existing mining laws of the United States upon the passage of this act, and the mineral laws of the United States are hereby extended over said lands."

The act of congress approved March 3, 1901, contains this further provision:

"The lands to be opened to settlement and entry under the acts of congress ratifying said agreements respectively shall be so opened by proclamation of the president, and to avoid the contests and conflicting claims which have heretofore resulted from opening similar public lands to settlement and entry the president's proclamation shall prescribe the manner in which these lands may be settled upon, occupied and entered by persons entitled thereto under the acts ratifying said agreements respectively; and no person shall be permitted to settle upon, occupy or enter any of said lands except as prescribed in such proclamation until after the expiration of sixty days from the time when the same are opened to settlement and entry."

Whatever uncertainty may have existed as to the intention of congress as to when mineral claimants might lawfully enter upon these lands for the purpose of prospecting for minerals and locating mineral claims, prior to the enactment

of the statute of March 3, 1901, there can be no serious contention now as to what the purpose of the lawmaking power was, as drawn from the provisions of both acts. Congress left the manner of the opening to settlement and entry of these lands to be determined by the president, and made it his duty to incorporate the rules and regulations adopted by him into the proclamation to be issued announcing the opening, and every person, whether seeking to discover minerals or to acquire settlement as a homestead claimant, was prohibited from settling upon, occupying or entering any of said lands until sixty days after the time for opening the same to settlement and entry had expired.

The proclamation of the president was issued July 4, 1901, and fixed the opening day on August 6, 1901, and contains the express warning that "no person shall be permitted to settle upon, occupy or enter any of said ceded lands except in the manner prescribed in this proclamation until after the expiration of sixty days from the time when the same are opened to settlement and entry."

It has been contended that the provisions of the act of 1901, and the proclamation, have no reference to any but homestead settlers and homestead claimants. We can see no valid reason for such a construction. These lands were but recently obtained by treaty from the Indian tribes; they were being eagerly sought after by immense numbers of people for mining, grazing and agricultural purposes; there was a sharp, well defined rivalry between the mineral claimants and the agriculturists. These matters were well known to congress, and to the interior department. It was contemplated that if the usual manner of opening public lands to settlement was adopted, that numerous conflicts would arise between the va-

rious classes of claimants and settlers, as well as among those of the same class; numerous contests would be prosecuted, great delays and expense would result, and probable loss of life. Hence congress sought to, in as large a measure as possible, avoid these known evils, and gave to the executive department extensive powers in adopting measures to avoid the contests and conflicting claims which have heretofore resulted from opening similar public lands to settlement and entry.

With these purposes in view, it cannot be consistently said that congress intended to discriminate in favor of the mining claimant and against the homestead claimant. This would be imputing to the lawmaking branch of the government improper motives. We cannot consent to such a doctrine in the absence of more weighty reasons. Those who were qualified to make mining locations and obtain title to public lands were not permitted to occupy any of these lands for the purpose of discovering minerals, prospecting for oil, or making mineral locations until sixty days after August 6th, 1901. And while it is true that no penalty is mentioned in the law, and no forfeiture is provided, yet it is a universal principle of law that one cannot acquire any rights in violation of law.

The lands included in the Comanche, Kiowa and Apache reservations were all classed as agricultural lands by the surveyors' reports, and anyone who makes an adverse claim as to the character of the lands, takes the burden of overcoming the *prima facie* case made by the records of the interior department, and of showing affirmatively that the land claimed as mineral is more valuable for minerals than for agricultural purposes, and when claimed under the act of congress, approved February 11, 1897, authorizing the entry of lands containing petroleum or other mineral oils, must show that

28—Vol 13

the land claimed "contains petroleum or other mineral oils and is chiefly valuable therefor." All lands containing petroleum are not subject to entry under the mineral laws, but only such as are "chiefly valuable therefor," and this is a subject of proof. If the oil is in such limited quantities that it cannot be worked at a profit, then it cannot be said to be "chiefly valuable" for its oil.

Where a homestead entry has been made in good faith, after an examination by the entryman of the surface indications, and no evidence of minerals or oils discovered, the discovery of minerals or oils in such land afterwards will not necessarily defeat his right to the land. Until he has made final proof, paid the land office charges, and obtained his final receipt, the character of the land is open to inquiry, and if it can be shown by one making an adverse claim that the land is more valuable for mineral than agricultural purposes, the homestead entry may be cancelled, and the mineral location allowed. (*Rea et al. v. Stephenson,* 15 L. D. 37; *Jones v. Driver,* 15 L. D. 514.)

This rule was announced in the above cited cases by Mr. Assistant Secretary Chandler in 1892, and we have not found where the courts or department has questioned the correctness of it. The homestead entry may be attacked by contest or protest, and when the character of the land as mineral or non-mineral, is put in issue, it must be determined by the land department, and the finding of that department on questions of fact are, as a general rule, conclusive on the courts. But this court has frequently held that a homestead entry entitles the entryman to the exclusive possession of the land embraced in his entry as against all persons, except one asserting a superior or prior right. (*Sproat v. Durland* 2

Okla. 24; *Woodruff v. Wallace,* 3 Okla. 355; *Reaves v. Oliver,* 3 Okla. 62; *Littlefield v. Todd,* 3 Okla. 1; *Glover v. Swartz,* 8 Okla, 642; *Barnes v. Newton,* 5 Okla. 428.)   And injunction is a proper remedy to prevent trespassers and interlopers from interfering with the entryman's possession.

At the time the above decisions were enunciated, there were no mineral lands in Oklahoma, and the only class of claimants who were permitted to jointly occupy the lands with the entryman was one claiming prior settlement or under a soldier's declaratory filed prior to the homestead entry.   We are now confronted for the first time in this court with a claimant under the mineral laws of the United States.   As stated before, the defendants in error have filed no brief, and we have made such examination of the authorities as the character of the questions involved and the condition of the case requires.   We can see no reason why the same rule applied by this court in former cases is not applicable to the case of a mineral claimant claiming adversely to a homestead claimant.   The land is *prima facie* non-mineral, the entryman has made the necessary non-mineral affidavit, and the officers of the land department have allowed his entry; this impresses the land embraced in his entry with the character of agricultural, non-mineral land.   If there was a valid prior location of a mineral claim on the tract, such location entitles the mineral claimant to possession of his mineral claim until the land department hears and determines the question as to the character of the land.   On the other hand, if the mineral claimant had not made a valid location prior to the homestead entry, then he must contest the adverse homestead entry and secure its cancellation, and until he has done this, we see no reason why he should be permitted to jointly occupy the land

any more than would one one contesting for a preference right.   There cannot be two valid entries on the land at the same time, neither can there be a valid mineral location and a valid homestead entry.   One must yield to the other, dependent upon the character of the land.

If the homestead entryman has acted in bad faith and obtained his' entry through fraud, knowing that the tract is mineral land, then his entry may be cancelled for fraud any time before final proof by a contestant, and after final proof by the United States.

But the discovery of mineral after final proof will not defeat the title of the entryman.   It seems to be well settled that a mining claimant cannot make a valid location until after he has actually discovered mineral.   He is not permitted to file a location for the purpose of speculation, or of prospecting for ore or oils.

Sec. 2320, rev. stat. U. S. specifically provides that no location shall be made until the discovery of the vein or lode within the limits of the claim located.   This section is made applicable to placer claims, and by later statute to lands containing petroleum and other oils.   (*King v. Amy & Silversmith & Co.,* 152 U. S. 222.)

Neither will mere surface indications support a location.   It is the common experience of persons of ordinary intelligence that petroleum in valuable quantities is not found on the surface of the ground, nor is it found in paying quantities seeping from the earth.   Valuable oil is found by drilling or boring into the interior of the earth, and either flows or is pumped to the surface, and until some body or vein has been discovered from which the oil can be brought to the surface, it cannot be considered of sufficient importance

to warrant a location under the mineral laws. This question is ably discussed by circuit judge Ross of California, in *Nevada-Sierra Oil Co. v. Home Oil Company*, 98 Fed. 673, and it was there said:

"To constitute a prior discovery which will support a location on public ground as an oil placer claim under the mining laws, the locator must have actually discovered oil within the limits of his claim. Mere surface indications of the existence of oil therein, however strong, are not sufficient, nor is the existence of oil upon adjoining lands." See also *C. Coal Co v. U. S.*, 123 U. S. 307.

It is further said in the same case, and alike applicable here, that "While it is not necessary that a locator should be the first discoverer of mineral upon the land in order that a prior discovery by another shall inure to his benefit and give validity to his location, it must have been known to and adopted and claimed by him." See also *Olive Land and Development Co. v. Olmstead*, 103 Fed. 568; *Davis, Admr., v. Weibold*, 139 U. S. 507.

In Donahue on "Petroleum and Gas," a very excellent text-book, published recently, the author says, p. 235:

"So where a person had made a selection of land in place of land within a certain reservation, and the selection was made as agricultural land, the person who selected the land acquired an equitable title to the land, even though the government had not yet issued a patent. Where such person complied with all the requirements of the law, the court will grant an injunction against persons who invade the land and extract from the land petroleum which had been discovered after the selection had been made, and the injunction will be continued until the land department will determine whether or not the land will be awarded to the settler as agricultural land." (*Nevada-Sierra Oil Co. v. Home Oil Co.*

98 Fed. 673; *Sullivan v. Iron Silver Co.*, 143 U. S. 374; *Casino Co. v. Gray Eagle Co.*, 104 Fed. 20.)

An application of the principles herein enunciated to the facts as shown by the petition and affidavits, leads us to the conclusion that the defendants in error were not entitled to have the temporary injunction dissolved upon the showing made. Under the law enacted by congress and the rule announced by the proclamation of the president, no person who had not drawn a number entitling such person to make a homestead entry upon lands in the Comanche, Kiowa, and Apache reservations was permitted to occupy or settle upon any of said lands until after the 5th day of October, 1901, and the affidavit of Patterson shows that the persons under whom the corporation claims went upon the tract of land in dispute and discovered oil on the 7th day of August, 1901, and staked and located the land as a mineral claim on the 8th day of August. They were expressly prohibited at that date from settling upon or occupying said land, and their entry, staking and occupancy being in violation of law, confers upon them no right as against the plaintiff in this action. The plaintiff made his homestead entry on the 15th of November, 1901, and there is no proof that the defendants made any new location, settlement or occupancy between October 5th and November 15th, 1901.

It furthermore appears from Patterson's affidavit that the location was made by Thomas Brown and seven others on the 8th day of August, but there is no evidence that Brown and his associates ever assigned or in any manner transferred their right to the corporation. Simply taking stock in a corporation would not transfer their property rights to the cor-

poration, and in order to sustain their position in this case, the corporation must show a valid assignment of all the right, title and interest of each of these several eight locators to said mining location. The discovery of oil in the well drilled by Baltzeger in July, 1902, as shown by his affidavit, cannot be considered in determining whether or not a discovery of oil was made prior to the filing of the alleged location. The location of a mining claim depends upon three essential requirements: (1) discovery, (2) marking of the boundaries, (3) record, and under the provisions of the statute that "no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the vein located," means when applied to placer mining for petroleum, that no location can be made until the discovery of the vein or deposit from which the oil is drawn. If surface indications are found sufficient to warrant the prospector to spend his time and money on the property with the reasonable prospect of reaching deposits of greater commercial value, such indications will protect the prospector as against any new locator until he can follow up his indications and make the discovery. But such discovery is a condition precedent to a valid location. In support of these conclusions, see Donahue, p. 233, and authorities cited.

The plaintiff has a valid, existing homestead entry upon the lands classed as agricultural, and until some one shows a prior and superior right, the courts will protect him in the possession of said land against trespasses that are of a character to appear continuous.

The district judge erred in sustaining the motion to discharge the temporary injunction. The order is reversed,

and the cause remanded with directions to close the issues, and set the cause for trial on the merits, and in the meantime the temporary injunction granted by the probate judge will be continued in force.

Reversed at the costs of defendants in error.

Gillette, J., who presided in the court below, not sitting; all the other Justices concurring.