[Civ. No. 1969.   Third Appellate District.—July 1, 1919.]

## DOUBLE EAGLE MINING CO. (a Corporation), et al., Respondents, v. J. D. HUBBARD et al., Appellants.

[1] PUBLIC LANDS—CANCELLATION OF PATENT—RESTORATION OF LAND TO PUBLIC DOMAIN—EFFECT OF RIGHT TO APPEAL.—When the patent to the Central Pacific Railroad Company, the effect of which was to withdraw the lands embraced therein from public entry, was by a decree of the circuit court of the United States canceled, the land was restored to the public domain as of the date of the decree; and the Railroad Company not having availed itself of the right to appeal from such decree within one year, it became final as of its date.

[2] ID.—DATE WHEN OPEN TO MINERAL LOCATION—FORMAL PROCLAMATION NOT NECESSARY.—Where the patent to the Central Pacific Railroad Company was canceled by a decree of the circuit court of the United States and the land returned to the public domain, such land was immediately thereupon open to mineral location. Formal proclamation or order by the Land Department at Washington declaring the land so open, or notice thereof to the local land office, was not necessary.

[3] ID.—RULES OF LAND DEPARTMENT — APPLICATION TO MINING CLAIMS.—Rules 51, 52, and 53 of the Land Department of the United States refer only to contests arising out of entries of land initiated in a local land office and in which the contest also originated in that office, and have no application to mining claims.

[4] ID.—ISSUANCE OF PATENT—EVIDENCE OF VALIDITY OF SIMILAR LOCATIONS.—The action of the Land Department of the United States in issuing a patent to a mining claim, particularly without contest, is not conclusive that the location of another claim, being a part of the same section and located under similar circumstances, is regular and authorized.

APPEAL from a judgment of the Superior Court of Los Angeles County.   H. D. Gregory, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Lon Bond and Deirup & Deirup for Appellants.

Niles E. Wretman for Respondents.

1. Conclusiveness of decision of the Land Department canceling a patent, note, L. R. A. 1918D, 634.

CHIPMAN, P. J.—The action arises over conflicting claims to mining property. Plaintiffs had judgment that they were entitled to the possession of the premises in controversy, and the appeal is by defendants from said judgment.

The points urged by appellants for a reversal of the judgment are: That respondents failed to do their assessment work for the years 1913 and 1914; and "that at the time of location by the predecessors of respondents said land was not open to location."

1. The court found that plaintiffs and their predecessors have in all respects complied with the laws "relating to the performance of assessment work upon said claims." While there was a conflict in the evidence upon this point there was, in our opinion, sufficient justification for said finding and, under the well-known rule, we must decline to enter upon a discussion of this point.

2. The contention that the land was not open for location is based upon the following facts:

On March 17, 1875, a patent was issued to the Central Pacific Railroad Company to land which included the mining claims in controversy. Said patent was canceled by a decree entered in the circuit court of the United States on January 11, 1898.

On July 23, 1898, the predecessors of plaintiffs posted a notice of location of a placer mining claim upon the land now claimed by them, and said notice was recorded on August 20, 1898.

On September 24, 1900, the commissioner of the general land office wrote to the register and receiver at Marysville, reciting the fact of the entry of said decree, stating that said decision had never been appealed from, and directing said register and receiver "to make proper notation on your records as to the cancellation of the patent as to said tract."

Defendants located a portion of said land on November 11, 1914, and another portion on May 3, 1915.

The contention of appellants is that the making of said decree by the circuit court "did not have the effect of restoring the land to the public domain, but that the effect of the decree was merely to return the land to the proper executive officers . . . for such disposition as they should make of it according to law" and, consequently, that the

location by plaintiffs' predecessors was premature, and, therefore, invalid.

[1] The effect of the patent to the Railroad Company was to withdraw the land from public entry. When the patent was canceled by decree of the court the land was restored to the public domain as of the date of the decree. The Railroad Company had under the statute one year within which to appeal, but as it did not avail itself of that right, the decree remained unaffected and became final as of its date.

[2] The position of appellant is that the land was not open to a mineral location after the patent was canceled until the Land Department at Washington, by some formal proclamation or order, had so declared and notice thereof had been given to the local land office at Marysville. The only action of the Land Department in the matter, so far as appears, took the form of the letter of the commissioner of the general land office above stated nearly three years after the patent was canceled. It did not purport to restore the land to entry nor did it in any wise affect the status of the land. It simply found it and left it as the effect of the decree left it, namely, as part of the public domain subject to disposition under congressional enactments pertaining to the mineral land in the several states. Appellant's contention that preceding any location of a mining claim after the decree it was necessary that some proclamation that the land was open to entry should have been given, would mean that the land to this day is reserved from location, for no such proclamation has ever been made. It would seem to us that leaving the land to the operation of the decree and the general land laws without further action by the government justifies the inference that in the opinion of the Land Department no further action after the decree was entered was necessary to open the land to location as mineral land. As tending to refute this view of the case appellant cites an act of Congress restoring part of an Indian reservation to the public domain. *Kendall* v. *San Juan Milling Co.*, 144 U. S. 658, [36 L. Ed. 583, 12 Sup. Ct. Rep. 779, see, also, Rose's U. S. Notes], is cited, where it was held that the restored portion of the reservation was not open to mineral location in advance of the proclamation of the President, any more than to any other kind of entry.

But, by the very terms of the act, it was provided that "the same shall be open to settlement and entry by the proclamation of the President of the United States."

[3] The following are the only rules of the Land Department called to our attention:

"Rule 51. Upon the termination of a contest the register and receiver will render a joint report and opinion in the case, making full and specific reference to the postings and annotations upon their records.

"Rule 52. The register and receiver will promptly forward their report, together with the testimony and all the papers in the case, to the commissioner of the general land office, with a brief letter of transmittal, describing the case by its title, the nature of the contest and the tract involved.

"Rule 53. The local officers will thereafter take no further action affecting the disposal of the land in contest until instructed by the commissioner."

These rules clearly refer only to contests arising out of entries of land initiated in a local land office and in which the contest also originated in that office. These rules have no application to mining claims, for the reason that mining locations are not initiated in any local land office of the government, but take their origin under authority of the United States statutes "under regulations prescribed by law, and according to the local customs or rules of miners, in the several mining districts so far as the same are applicable and not inconsistent with the laws of the United States." (Rev. Stats., sec. 2319, [U. S. Comp. Stats., sec. 4614; 2 Fed. Stats. Ann., 2d ed., p. 1198].) This act provides "that all valuable mineral deposits in land belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States." And this has been the law since the acts of July 26, 1866, c. 262, 14 Stat. 251, and May 10, 1872, c. 152, 17 Stat. 91. Under this invitation and authority the prospector may go on to any of the public lands of the United States and make his explorations and upon the discovery of valuable minerals and in order to secure his title to the same he need only to post his notice, stake out his claim and file his notice in

the office of the recorder of the mineral district or in the office of the county recorder "according to the local customs or rules of miners in the several mining districts." He has nothing to do with the local land office in perfecting his claim or in working it. He may never apply for a patent to his claim, and until he does so apply no notice to the general government is required of him that he has made a claim. By the performance of one hundred dollars' worth of work annually on his claim he can hold it and work it against the claim of the whole world and for an indefinite period. It is common knowledge that many valuable mines are worked out under such locations for which patents are never applied. In this respect the locator of a mining claim stands on a wholly different footing from the homesteader or pre-emptor of public land.

Under the location claimed by plaintiffs this mining land has been occupied and worked ever since 1898 and many thousands of dollars have been expended in its exploration and development. Defendants in 1914, sixteen years after this location was made in good faith and kept alive with equal good faith, entered upon the claim, dispossessed plaintiffs, and seek to maintain their right upon what, we think, is an erroneous construction to be given the effect of the decree canceling the Railroad Company's patent and upon regulations of the general land office, which, we think, wholly inapplicable.

[4] Respondents call attention to the fact that the Land Department at Washington has issued a patent to a mining claim, being a part of the section in question and located under circumstances similar to those under which respondents are claiming. And it is urged by respondents that this is virtually an admission by the government that such locations were regular and authorized. As to this appellants say: "We do not agree that the issuance of patents to other parties, particularly without contest, can be taken as an adjudication on any point whatever." Appellants are, no doubt, right in holding that the action of the Land Department in the case mentioned is not at all conclusive in the present case. But it must be admitted that the Land Department would not have been likely to pass to patent a claim which on its face would show that it was prematurely made, and, therefore, void, even if there was no contest.

However this may be, we do not base our conclusion in any degree upon the action taken in the case mentioned. Both parties concede that no case has been found in which the question now here has been decided by any court, and we have found none. We are satisfied that the location under which plaintiffs claim title and right of possession was authorized and legal, though initiated before time for appeal from the decree of the federal court had expired.

The judgment is affirmed.

Burnett, J., and Hart, J., concurred.