No. 13,443.

BROWN *v.* STANDARD OIL COMPANY OF INDIANA ET AL.
(45 P. [2d] 639)

Decided May 13, 1935.

Mr. John T. Bottom, Mr. James J. Sullivan, Mr. Anthony F. Zarlengo, Mr. Henry E. Zarlengo, Mr. Albert E. Zarlengo, for plaintiff in error.

Messrs. Dines, Dines & Holme, Mr. Harold D. Roberts, Mr. J. Churchill Owen, for defendants in error.

*In Department.*

Mr. Justice Bouck delivered the opinion of the court.

C. O. Brown, as plaintiff, brought an action in the district court of Denver, the purpose being to require an accounting of the defendants. The latter interposed a general demurrer and also special demurrers, which latter set up, by way of defense, various statutes of limitations. The demurrers were sustained. The plaintiff having elected to stand upon the amended complaint, the action was thereupon dismissed. Brown now asks that the judgment of dismissal be reversed.

The plaintiff seeks to have the defendants declared trustees for him in relation to the proceeds of oil and gas from certain lands on account of an interest therein which he claims to own.

The allegations in the lengthy amended complaint, as paraphrased in the plaintiff in error's brief, are as follows:

"In 1887 William Myers and others located placer mining claims in Wyoming and oil was discovered in commercial values on these claims. In 1909 the Presi-

dent withdrew public lands, including these claims, from location. Existing claims that were valid at the time of the order were protected by a saving clause in the order. This withdrawal order was confirmed by Act of Congress in 1910. At the time of the order the claims of Myers and his co-locators were existing and valid. A few months after the order Fitzhugh and Henshaw ejected the original locators by force and violence and attempted to relocate the claims. Myers died in 1905 leaving various heirs whose interest is vested in plaintiff by means of various conveyances. After 1909 the original locators were prevented from doing the annual assessment work by the force and violence of Fitzhugh and Henshaw. The rights of the original locators were never forfeited in accordance with the mining laws of the United States. In 1920 the Leasing Act was passed and defendants wrongfully caused the fee title of Myers to be transferred to the Government and took back a lease on these lands from the United States. All this was fraudulent. Defendants have been removing oil from the claims without right.''

 It is at once apparent from the above summary, and also from the amended complaint itself, that this consists largely in statements of legal conclusions wholly insufficient because the ultimate facts are absent. We might well rest our decision upon this fatal lack. For the sake of our discussion, however, we shall suppose—contrary to the actual situation—that such ultimate facts are properly pleaded. Our purpose in so doing is to show that the amended complaint would be insufficient even if, in addition to the facts affirmatively pleaded or admitted, we had before us facts which might be alleged as justifying the legal conclusions in so far as they tend to support the plaintiff's theory of the case and are not inconsistent with the plaintiff's affirmative allegations. All the facts are taken as confessed by the demurrer.

 We have before us at the outset, then, certain valid and subsisting placer locations made on the public

domain in Wyoming in 1887 and so continuing to exist, unpatented, when President Taft on September 27, 1909, issued an executive order which withdrew from entry certain areas within the boundaries of which were these locations; also the Act of Congress of June 25, 1910 (36 Stat. 847, c. 421; Title 43, sec. 141 et seq., United States Code), confirming the 1909 order; a further and similar executive order issued under the authority of this act on July 1, 1910; also the so-called Leasing Act passed by Congress on February 25, 1920 (41 Stat. 437, c. 85; Title 30, sec. 181 et seq., United States Code). By various instruments recorded in 1924, the plaintiff acquired the interests of William Myers's heirs. In 1910 his grantors had been ousted from possession by persons not shown to be in any way connected with the defendants, and neither he nor those grantors have been in actual possession of their locations at all since they were ousted as aforesaid. They have taken no steps to regain possession.

The Leasing Act, supra, provides among other things: "Sec. 18. [2 Mason's Code, 2262, §227.] That "upon relinquishment to the United States, filed in the General Land Office within six months after the approval of this Act, of all right, title, and interest claimed and possessed prior to July 3, 1910, and continuously since by the claimant or his predecessor in interest under the preexisting placer mining law to any oil or gas bearing land * * * embraced in the Executive order of withdrawal issued September 27, 1909, and not within any naval petroleum reserve, and upon payment as royalty to the United States of an amount equal to the value at the time of production of one-eighth of all the oil or gas already produced * * * the claimant, or his successor, if in possession of such land, undisputed by any other claimant prior to July 1, 1919, shall be entitled to a lease thereon from the United States for a period of twenty years, at a royalty of not less than 12½ per centum of all the oil or gas produced * * *.

"All such leases shall be made and the amount of roy-

alty to be paid for oil and gas produced, except oil or gas used for production purposes on the claim, or unavoidably lost, after the execution of such lease shall be fixed by the Secretary of the Interior under appropriate rules and regulations * * *. In case of conflicting claimants for leases under this section, the Secretary of the Interior is authorized to grant leases to one or more of them as shall be deemed just. All leases hereunder shall inure to the benefit of the claimant and all persons claiming through or under him by lease, contract, or otherwise, as their interests may appear * * *.''

Neither the plaintiff nor any of his grantors proceeded under the above provisions of the Leasing Act to obtain any title or estate from the Government by lease or otherwise.

The case at bar is ruled by the principles laid down in the case of *Hodgson v. Federal Oil & Development Co.,* 274 U. S. 15, 71 L. Ed. 901, 47 Sup. Ct. 502. They are parallel cases. The Hodgson case concerned another interest in the very same placer claims involved here.

In his opinion there Mr. Justice McReynolds quotes from *Anicker v. Gunsburg,* 246 U. S. 110, 117, 62 L. Ed. 603, 614, 38 Sup. Ct. 228, 229, the following, which under the facts herein, is also decisive for us: ''In order to maintain a suit of this sort the complainant must establish not only that the action of the Secretary was wrong in approving the other lease, but that the complainant was himself entitled to an approval of his lease, and that it was refused to him because of an erroneous ruling of law by the Secretary.'' The amended complaint of the plaintiff is thus clearly insufficient when tested by the general demurrer. See also: *Sullivan v. Mammoth Oil Co.* (C. C. A. 8th Circuit), 22 F. (2d) 663. It is consequently unnecessary to determine whether any of the limitations invoked by the special demurrers apply. For the same reason it is unnecessary to consider certain matters of pleading and practice, argued by counsel, bearing upon

the nature of the cause of action which is claimed by the plaintiff to exist in his favor.

 A certain motion was filed by the plaintiff in error a week before this case came on for oral argument, long after the printed briefs had all been filed, that motion having for its object not only the barring of certain of those defendants who are foreign corporations from defending, but also the striking from the files of the briefs in which they had joined with the other defendants. The ground stated for the motion is that the corporations referred to ''have not paid their license taxes and have not qualified to do business in this State as required by the laws of the State of Colorado.'' The motion comes too late. Without considering or passing upon the merits thereof we therefore deny the motion.

Judgment affirmed.

MR. CHIEF JUSTICE BUTLER and MR. JUSTICE HILLIARD concur.