[Civ. No. 8469.   Third Dist.   Aug. 14, 1953.]

CECIL WETSEL et al., Petitioners, v. SUPERIOR COURT OF COUNTY OF EL DORADO, Respondent; KEITH V. O'LEARY et al., Real Parties in Interest.

704

Gard Chisholm, Russell A. Harris and William E. Dopkins for Petitioners.

Charles L. Gilmore for Real Parties in Interest.

SCHOTTKY, J.—Petitioners filed in this court a verified petition for a writ staying further proceedings in the respondent superior court until the validity of the entry of the said Keith V. O'Leary and Donald K. Moore on the real property described in said complaint and their claim of right or title thereto as a placer mining claim shall be finally determined by the United States of America.

The petition alleged in substance as follows:

That one O'Leary and one Moore were holders of an unpatented placer mining claim to the land in controversy; by a contract between petitioners and the United States, petitioners were granted the right to cut timber upon the land in question, remove and sell same;

That on July 11, 1952, O'Leary and Moore, who are the real parties in interest, filed a complaint against petitioners in the Superior Court of El Dorado County alleging a trespass

on the part of petitioners in entering upon the land in question and in cutting, removing and selling the timber thereon, seeking damages therefor;

That on August 7, 1952, the Bureau of Land Management of the Department of Interior of the United States served O'Leary and Moore with a notice of contest as to the validity of their entry upon the land in question under their unpatented placer mining claim. This proceeding was instituted upon the grounds: "(1) that the land embraced in the claim is non-mineral in character; and (2) that minerals have not been found within the limits of the claim in sufficient quantities to constitute a valid discovery;"

That on November 12, 1952, the petitioners herein petitioned the Superior Court of El Dorado County to stay the proceedings instituted before it by O'Leary and Moore against the petitioners herein until a final determination of the proceedings before the United States Department of Interior, Bureau of Land Management; that this was denied by the trial court;

That on November 28, 1952, the contest before the Bureau of Land Management was set for hearing on January 7, 1953; that after the hearing was finally held before the Bureau, O'Leary and Moore defaulting, on February 19, 1953, a decision was rendered wherein it was held that O'Leary's and Moore's mining claim was invalid because: (1) The land embraced in the claim is nonmineral; and (2) minerals have not been found within the limits of the claim in sufficient quantities to constitute a valid discovery; that default judgment was entered accordingly and the contestees, O'Leary and Moore, were given 30 days within which to appeal;

That after the above decision, on or about February 26, 1953, the Secretary of the Department of the Interior of the United States of America ordered and directed that O'Leary and Moore be allowed to submit evidence bearing upon the validity of their entry on and title to the real property in question, but that a final determination of said proceedings is still pending and undisposed of, and the right to determine the validity of O'Leary's and Moore's claim rests solely with the United States of America; that notwithstanding this, the respondent has set the action presently pending between petitioner and O'Leary and Moore for trial on June 1, 1953, and there can be no final determination of the issues in such pending action until such time as the United States of America has rendered a final decision in respect to the validity of the

entry on and claim of title to the real property in question by O'Leary and Moore.

Upon the filing of the petition this court ordered that proceedings in the case of *O'Leary* v. *Wetsel,* pending in the Superior Court in El Dorado County be stayed until the further order of this court and directed that said court and Keith V. O'Leary and Donald K. Moore, the real parties in interest, show cause why said order should not be made permanent.

O'Leary and Moore filed an answer in which they denied certain allegations of the petition, and then set forth a separate defense in substance as follows:

That in June, 1950, Moore inquired of the District Land Office, Bureau of Land Management, Sacramento, and was informed that the land in question was public land, mineral in character, and open to mining location; that thereafter the real parties in interest, on June 13, 1950, went upon the land and discovered mineral thereon, to wit, gold, and did post thereon a notice of location of the Kay Placer Mining Claim, same then being recorded, and ever since they have been in continuous possession under said mining location, mining and developing same; that notwithstanding knowledge of this by petitioners, petitioners applied to the Regional Administrator, Bureau of Land Management, to purchase the standing timber thereon, and thereafter, pursuant to the orders of the Regional Administrator, an unknown employee from said office went upon the land and measured the timber thereon, saw the posted notice, and visited the county recorder and saw the record of the mining claim, finally reporting same to the Regional Administrator;

That notwithstanding the knowledge by petitioners and the Regional Administrator of the mining claim and possession of it by the real parties in interest, and without any proceedings or notice whatsoever, a contract was entered into selling to petitioners 290,000 board feet of Ponderosa pine then standing on the Kay Placer Mining Claim;

That pursuant to said contract and with full knowledge of the prior location and ownership of the real parties in interest of said standing timber, petitioners wilfully, unlawfully and forcibly, against the will and without the consent of the real parties in interest, went upon the land and cut and removed all merchantable standing timber; that upon discovering this the real parties in interest filed the action in respondent court;

That subsequent to this and acting in excess of jurisdiction, the Bureau of Land Management served the real parties in interest with notice of contest, and notwithstanding the further absence of jurisdiction a hearing was held by the District Land Office, Bureau of Land Management, without the presence of the contestees (real parties herein) or their attorney, wherein it was decided that the real parties in interest herein had no valid claim to said land, and were thereby deprived of the premises, said decision later being set aside by the Secretary of the Interior;

That notwithstanding the absence of jurisdiction, and the prior exclusive jurisdiction of the respondent court, the Regional Administrator instituted all the foregoing proceedings;

That if respondent court has no jurisdiction over the cause, and the real parties herein have no claim to said land, but themselves are and have been naked trespassers, then the United States and not petitioners herein is the real party petitioner as the owner of the land since petitioners are without interest.

The facts as they appear from the petition and answer, and the exhibits attached thereto, are not in dispute. O'Leary and Moore posted a notice of location of placer claim on June 13, 1950, and recorded same, and within 90 days thereafter recorded a statement of markings and boundaries and performance of required discovery work. Thereafter, on December 12, 1951, the Bureau of Land Management of the United States entered into a contract with petitioners to sell them 290,000 board feet of Ponderosa pine then standing on the land described in said notice of location and petitioners went upon said land and cut and removed all merchantable standing timber. Thereafter, on July 11, 1952, O'Leary and Moore filed an action in the superior court against petitioners for trespass and damages. On August 7, 1952, the Bureau of Land Management of the Department of the Interior of the United States served O'Leary and Moore with a notice of contest as to the validity of their entry upon the land in question under their unpatented placer mining claim, alleging that the land was nonmineral in character and minerals had not been found within the limits of the claim in sufficient quantities to constitute a valid discovery. Then followed the proceedings described in the petition and answer, and hereinbefore set forth.

It is the position of petitioners that the Bureau of Land Management having filed a contest of the mining location of

the real parties in interest, and said contest not having been finally determined, the respondent superior court should not proceed to trial in the action filed by the real parties in interest. They argue that a final determination by the Bureau of Land Management that the land covered by the mining location of the Kay mining claim was nonmineral in character and that minerals had not been found on it in sufficient quantities to constitute a valid discovery would prevent any recovery by O'Leary and Moore in their action against petitioners.

Respondent and the real parties in interest in reply contend that O'Leary and Moore had a valid placer mining claim and that petitioners without right trespassed upon said claim and cut and removed the timber therefrom.

■ In the instant proceeding which is merely to stay further proceedings in the respondent superior court until the validity of the said placer mining location has been finally determined by the Bureau of Land Management of the Department of Interior of the United States, we cannot pass upon the issues involved in the case before the superior court or upon the issues involved in the proceeding before the Land Department.

It appears that O'Leary and Moore posted a notice of location of the Kay Placer Mining Claim on June 13, 1950, and recorded same. Eighteen months afterward the Bureau of Land Management entered into an agreement with petitioners for the sale of the standing timber on said land and petitioners went upon said land and removed said standing timber. It seems somewhat strange that the bureau would enter into such an agreement when the notice of location was posted on a tree on said land (as appears from the exhibits), and was recorded in the office of the county recorder, before the validity of the mining location was either attacked or its invalidity determined. ■ For as was stated in *Watterson* v. *Cruse,* 179 Cal. 379, at page 382 [176 P. 870]:

". . . While the paramount fee remains in the government until it has issued its patent, yet as to everyone else 'the estate acquired by a perfected mining location possesses all the attributes of a title in fee, and so long as the requirements of the law with reference to continued development are satisfied, the character of the tenure remains that of a fee.' (2 Lindley on Mines, 3d ed., sec. 539; *Merritt* v. *Judd,* 14 Cal. 59; *Hughes* v. *Devlin,* 23 Cal. 501; *Buchner* v. *Malloy,* 155 Cal. 253 [100 P. 687].)'' (See, also, *Chittim* v. *Belle Fourche*

*Bentonite Products Co.,* 60 Wyo. 235 [149 P.2d 142, 148].)
■ And as this court said in *Smpardos* v. *Piombo Const. Co.,* 111 Cal.App.2d 415, at page 419 [244 P.2d 435]:

". . . Under the authorities cited, the locator of a mining claim has the right to the exclusive use of the surface of said mining claim, and if someone else dispossesses him and makes use of the surface of said claim we see no escape from the conclusion that the trespasser is liable for the reasonable value of the use of said property, together with any other damage that said trespasser may have caused to the locator. If this were not so the locator's right to the possession of his claim would indeed be a precarious one."

It would seem to us that the correct and orderly procedure would have been to contest the validity of the mining location and have the contest determined before authorizing the removal of the timber therefrom. In the instant case the government did not file any contest of the mining location of O'Leary and Moore until after they had filed their action in respondent court against petitioners. However, we are not here concerned with the propriety of the action of the Bureau of Land Management. It is conceded that they did have the right to contest the validity of the mining location of O'Leary and Moore and that the Bureau of Land Management has authority to pass upon the validity of said mining location. ■ The contest having been filed by the Bureau of Land Management, the question of whether or not the land was mineral in character or whether there had been a sufficient discovery of mineral to characterize the land as mineral are questions of fact to be determined by the General Land Office (*Johnson* v. *Drew,* 171 U.S. 93 [18 S.Ct. 800, 43 L.Ed. 88]; *Cameron* v. *United States,* 252 U.S. 450 [40 S.Ct. 410, 64 L.Ed. 659]; 36 Am.Jur., Mines and Minerals, § 13), and the final decision of General Land Office upon the mineral or nonmineral character of land is conclusive. ■ As stated in *Gage* v. *Gunther,* 136 Cal. 338, at pages 343-344 [68 P. 710, 89 Am.St.Rep. 141]:

"The land department of the United States has been created as the tribunal for determining the right under the laws of the United States of any person to receive a patent for any of the public lands, and that tribunal is vested with jurisdiction to determine all questions of fact that may arise in any controversy respecting such right. As a necessary result therefrom, the determination by this tribunal of any question of fact is conclusive upon all other tribunals wher-

ever such questions may be presented. The character of the land, whether it is subject to entry under the laws invoked therefor, the qualifications of the entryman, the extent of the improvement or reclamation made by him, whether such improvement is a sufficient compliance with the statutory provisions for entitling him to a patent, or whether it has been made within the time prescribed by statute, or, if not, whether the reasons offered by him are sufficient to condone such failure, or any default on his part, whether he has been guilty of laches, or exercised sufficient diligence,—are all questions of fact to be submitted to and determined by the land department, and the issuance of a patent for the land is a final determination by that tribunal of the existence of all facts depending upon testimony which are necessary to entitle him to the patent, and, in the absence of fraud, mistake, or imposition, such facts are not subject to a re-examination in any other tribunal.''

Respondent and the real parties in interest have cited numerous cases in which the state courts have, in proceedings involving the possession of a mining claim, decided the question of the character of the land, the sufficiency of the discovery and the validity of the claims. But these were all controversies between different claimants through different notices of location. In such cases the United States government was not a party and nothing in such cases could affect the rights of the government as the owner of the paramount title. Here the United States government is contesting the validity of the mining location, and a finding by the respondent court contrary to the final decision of the Land Department would be of no effect. Under such circumstances we do not believe that the respondent court should proceed with the trial of the action by O'Leary and Moore against petitioners until the government's contest of the mining location has been finally determined.

The case of *Potter* v. *Randolph,* 126 Cal. 458 [58 P. 905], is quite similar in principle to the instant proceeding. Plaintiff brought a quiet title action against defendants. Plaintiff claimed title from the United States under a commuted homestead entry, and a duplicate receipt for a patent dated prior to the commencement of the action. At the time of the action there was a contest pending before the government as to whether the land in question was more valuable for mineral than for agricultural purposes. There the trial court held the proceedings before it in abeyance until a final determina-

tion had been made by the Land Department, and then quieted title in the plaintiff, basing its judgment upon the determination of the issues before the Land Department. Defendant appealed, contending that the trial court should have, upon their motion, dismissed the action because it had no jurisdiction to try the cause, a special tribunal having been created by Congress to determine such matters exclusively. In upholding the action by the trial court the Supreme Court stated at pages 461-462:

". . . The land department of the United States is not a special tribunal organized to determine who is the owner of land. The department is the medium through which parties may acquire the title of the United States. Its functions are mostly administrative and only incidentally judicial. It determines the existence or nonexistence of alleged facts, to enable it to select the person who is entitled to purchase. The proceeding is to acquire title, not to determine who has it.

"The title, when acquired, will, however, for many purposes date back to the first step in the procedure. The court, very properly, then delayed the trial until the question as to the character of the land was determined by the land department, which alone had the power to decide that controversy. The court had jurisdiction of the action, but could not try that particular controversy, which was involved in the action. . . .

"The land department having decided that the land was more valuable for agricultural than for mining purposes, the court was bound by the conclusion and properly refused to consider the evidence upon that subject offered by defendants."

In view of the foregoing we have concluded that action No. 7350, filed by *O'Leary and Moore* v. *Wetsel,* in the superior court, should not be tried until the contest by the government of the placer mining claim located by O'Leary and Moore has been determined, and it is therefore ordered that proceedings in said action be stayed until the United States of America has rendered a final decision as to the validity of the placer mining claim location of O'Leary and Moore.

Van Dyke, P. J., and Peek, J., concurred.

Real Parties' in Interest petition for a hearing by the Supreme Court was denied October 8, 1953.