CAMERON ET AL. *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 205. Argued January 29, 30, 1920.—Decided April 19, 1920.

The inclusion of part of a national forest within a monument reserve under the Act of June 8, 1906, c. 3060, 34 Stat. 225, by a proclamation of the President providing that both reservations shall stand as to the common area but that the monument reserve shall be dominant, and saving valid claims theretofore acquired, withdraws such area, except as to such claims, from the operation of the mineral land law. P. 454.

The Grand Canyon of the Colorado, in Arizona, is an "object of scien-

tific interest," within the meaning of the Act of June 8, 1906, *supra*, empowering the President to reserve such objects as "National Monuments." P. 455.

Mineral character and an adequate discovery of mineral within the location are essential to the validity of a mining claim, and without these the locator has not the right of possession. P. 456.

To bring a mining claim within an exception of "valid claims" in a proclamation establishing a monument reserve, the claim must be founded upon an adequate discovery of mineral made before the reservation; a discovery made later can confer no rights upon the claimant. *Id.*

To support a mining location the discovery must be such as to justify a person of ordinary prudence in the further expenditure of his time and means in an effort to develop a paying mine. P. 459.

A decision of the Secretary of the Interior, made upon an application to patent a mining claim within a monument reserve, finding the land claimed not mineral in character and the location not supported by any discovery antedating the reservation, and therefore rejecting the application and adjudging the location invalid, is conclusive as to the invalidity of the claim in a suit subsequently brought by the Government to enjoin the claimant from occupying and using the land for his private purposes and thus obstructing its use by the public as a part of the reserve. Pp. 459, 464.

A mining location which has not gone to patent is of no higher quality, and no more immune from attack and investigation, than unpatented claims under the homestead and kindred laws; and, so long as the legal title remains in the United States, the Land Department, in virtue of its general statutory duty and function, is empowered, after proper notice and upon adequate hearing, to determine whether such a location is valid, and, if found invalid, to declare it null and void. P. 460.

250 Fed. Rep. 943, affirmed.

THE case is stated in the opinion.

*Mr. William C. Prentiss,* with whom *Mr. Robert E. Morrison* and *Mr. Joseph E. Morrison* were on the brief, for appellants:

Possessory title to a mining claim is acquired under the mining laws wholly independently of the Land Department. Such title has the quality of a grant and is

property in the highest sense of the term. While, upon application for patent, the Land Department *ex necessitate* must pass upon the validity of the location, it does so administratively and not judicially. In case it refuses patent, its action is not conclusive, final, or binding, even as to itself. 42 L. D. 584; 43 L. D. 79.

Where the department, rightly or wrongly, denies patent to an applicant, without issuing patent to an adversary applicant, the effect is merely to wipe the application from the land records *pro tempore*. The department may afterward review its ruling, reinstate the application or entry, and grant patent.

Where, as here, the Land Department undertakes to go further and declare void the location upon which an application for mineral patent is predicated, such action is not conclusive, final, or binding, even as to itself.

The department is without power to enter a judgment of ejectment or in any manner to execute such an attempted declaration of illegality of a possessory mining claim.

Congress has not empowered the Land Department to pass upon the validity of a possessory mining claim otherwise than as involved in the actual issuance of patent to the claimant or an adversary claimant, and, then subject to limitations. Nor has Congress given the courts power, or imposed upon them the duty, of enforcing a mere declaration by the department of the invalidity of a possessory mining claim (not merged into disposition of the title to the land by issuance of patent to another), even assuming, for the sake of the argument, that Congress would have the power so to legislate.

It is only by the issuance of patent that action of the Land Department becomes effective, and then within limitations recognized by the courts.

The rule that decisions of the Land Department upon questions of fact are binding upon the courts is raised as an incident of, and in support of the integrity of patents,

recognizes that action by the Land Department upon applications for patent is not judicial but administrative, and is based upon the assumption that Congress, in vesting the department with administration of the laws governing the disposition of the title to public lands, conferred upon it the power and duty of deciding questions of fact involved in the granting of patents.

And the rule that decision by the Land Department of questions of law involved in the issuance of patent is not binding upon the courts, is recognition that the department acts administratively and not judicially.

The statement in the opinion in *Clipper Mining Co.* v. *Eli Mining Co.*, 194 U. S. 220, to the effect that the department, in rejecting an application to patent a mining claim, may go farther and set aside the location, is an *obiter dictum*, as clearly appears from a consideration of that case as it stood in the department. 7 Copp's L. O. 36; 11 L. D. 441, 442; 22 L. D. 527, 528; 33 L. D. 660, 665; 34 L. D. 401, 409.

Jurisdiction to cancel mining claims was disclaimed in 34 L. D. 276, and in the Instructions of February 6, and May 15, 1907, 35 L. D. 566; *id.* 565. The practice of investigating and passing upon mining locations in forest reserves, administratively (*H. H. Yard et al.*, 38 L. D. 59), was rejected in the unreported case of *Nichols and Smith*, October 24, 1913.

*Lane* v. *Cameron*, 45 App. D. C. 404, went upon the erroneous assumption that the power to determine the character of land as between the United States and a mining locator was vested exclusively in the Land Department, and that the courts alone would be powerless, which is contrary to *Gauthier* v. *Morrison*, 232 U. S. 452 (1 Lindley on Mines, 3d ed., § 108, pp. 188 *et seq.*), and contrary to the practice of the Government in bringing many suits attacking the possessory titles of oil land claimants.

The logical and proper tribunals to try the issue of dis-
covery, upon which the miner's title depends, are the
courts of the vicinage—not an administrative body
two or three thousand miles away acting both as prose-
cutor or plaintiff and judge or jury. *Overman Silver Min-
ing Co.* v. *Corcoran*, 15 Nevada, 147; *Erhardt* v. *Boaro*, 113
U. S. 527.

We submit that the decision of the department, in
final analysis, resolves into a ruling, not that Cameron
had not made discovery sufficient to validate the location,
but that he had not developed a paying mine, and that,
in any view, it was not entitled to judicial recognition.

The attempted setting apart of the land as the Grand
Canyon National Monument was unauthorized, violative
of the Forest Reserve Laws, and void.

*Mr. Assistant Attorney General Nebeker,* with whom
*Mr. H. L. Underwood,* Special Assistant to the Attorney
General, was on the brief, for the United States.

MR. JUSTICE VAN DEVANTER delivered the opinion of
the court.

This is a suit by the United States to enjoin Ralph H.
Cameron and others from occupying, using for business
purposes, asserting any right to, or interfering with the
public use of, a tract of land in Arizona, approximately
1500 feet long and 600 feet wide, which Cameron is claim-
ing as a lode mining claim, and to require the defendants
to remove therefrom certain buildings, filth and refuse
placed thereon in the course of its use by them as a livery
stable site and otherwise. In the District Court there
was a decree for the United States, and this was affirmed
by the Circuit Court of Appeals. 250 Fed. Rep. 943.

The tract is on the southern rim of the Grand Canyon
of the Colorado, is immediately adjacent to the railroad

terminal and hotel buildings used by visitors to the canyon and embraces the head of the trail [1] over which visitors descend to and ascend from the bottom of the canyon. Formerly it was public land and open to acquisition under the public land laws.  But since February 20, 1893, it has been within a public forest reserve [2] established and continued by proclamations of the President under the Acts of March 3, 1891, c. 561, § 24, 26 Stat. 1095, 1103, and June 4, 1897, c. 2, 30 Stat. 34–36; and since January 11, 1908, all but a minor part of it has been within a monument reserve [3] established by a proclamation of the President under the Act of June 8, 1906, c. 3060, 34 Stat. 225. The forest reserve remained effective after the creation of the monument reserve, but in so far as both embraced the same land the monument reserve became the dominant one.  35 Stat. 2175.  The inclusion of the tract in the forest reserve withdrew it from the operation of the public land laws, other than the mineral land law; and the inclusion of the major part of it in the monument reserve withdrew that part from the operation of the mineral land law, but there was a saving clause in respect of any "valid" mining claim theretofore acquired.  The United States still has the paramount legal title to the tract, and also has the full beneficial ownership if Cameron's asserted mining claim is not valid.

The defendants insist that the monument reserve should be disregarded on the ground that there was no authority for its creation.  To this we cannot assent. The act under which the President proceeded empowered him to establish reserves embracing "objects of historic or scientific interest."  The Grand Canyon, as stated in his proclamation, "is an object of unusual scientific in-

---

[1] The Bright Angel Trail.

[2] Originally the Grand Canyon Forest Reserve and now the Tusayan National Forest.

[3] Called the Grand Canyon National Monument.

terest." It is the greatest eroded canyon in the United States, if not in the world, is over a mile in depth, has attracted wide attention among explorers and scientists, affords an unexampled field for geologic study, is regarded as one of the great natural wonders, and annually draws to its borders thousands of visitors.

The defendants also insist that in holding the United States entitled to the relief sought the courts below gave undue effect and weight to decisions of the Secretary of the Interior dealing with Cameron's asserted claim and pronouncing it invalid. Rightly to appreciate and dispose of this contention requires a further statement.

The claim in question is known as the Cape Horn lode claim and was located by Cameron in 1902 after the creation of the forest reserve and before the creation of the monument reserve. To make the claim valid, or to invest the locator with a right to the possession, it was essential that the land be mineral in character and that there be an adequate mineral discovery within the limits of the claim as located, Rev. Stats., § 2320; *Cole* v. *Ralph, ante,* 286; and to bring the claim within the saving clause in the withdrawal for the monument reserve the discovery must have preceded the creation of that reserve.

Cameron applied to the land department for the issue to him of a patent for the claim and similarly sought patents for other claims embracing other portions of the trail into the canyon. A protest was interposed charging that the land was not mineral, that there had been no supporting mineral discoveries and that the claims were located and used for purposes not contemplated by the mineral land law; and the Secretary of the Interior directed that a hearing be had in the local land office to enable the parties concerned,—the protestant, Cameron and the Government,—to produce evidence bearing on the questions thus presented. 35 L. D. 495; 36 L. D. 66. After due notice the hearing was had, Cameron fully

participating in it. This was shortly after the creation of the monument reserve. In due course the evidence was laid before the Commissioner of the General Land Office and he concluded therefrom that the claims were not valuable for mining purposes, and therefore were invalid. The matter was then taken before the Secretary of the Interior and that officer rendered a decision in which, after reviewing the evidence, he said:

"It is not pretended that the applicant has as yet actually disclosed any body of workable ore of commercial value; nor does the evidence reveal such indications and conditions as would warrant the belief or lead to the conclusion that valuable deposits are to be found, save, apparently, in the case of the Magician lode claim. With that possible exception, the probabilities of such deposits occurring are no stronger or more evident at the present time than upon the day the claims were located. The evidence wholly fails to show that there are veins or lodes carrying valuable and workable deposits of gold, silver, or copper, or any other minerals within the limits of the locations. Sufficient time has elapsed since these claims were located for a fair demonstration of their mineral possibilities."

And further:

"It follows from the foregoing that each of Cameron's applications for patent . . . must be rejected and canceled, and it is so ordered.

"It is the further result of the evidence, and the Department holds, that the several mining locations, with the apparent exception of the Magician lode claim, do not stand upon such disclosures or indications of valuable mineral in rock in place therein, prior to the establishment of the National Monument and the withdrawal of the lands therein embraced, as to bring them within the saving clause of the Executive Order. The right of Cameron to continue possession or exploration of those claims

is hereby denied, and the land covered thereby is declared to be and remain part of the Grand Canyon National Monument as if such locations had not been attempted."

Directions were given for a further hearing respecting the Magician claim, but this is of no moment here.

That decision was adhered to on a motion for review, and in a later decision denying a renewed application by Cameron for a patent for the claim here in question the Secretary said:

"As the result of a hearing had after the creation of the national monument, the Department expressly found that no discovery of mineral had been made within the limits of the Cape Horn location, and that there was no evidence before the Department showing the existence of any valuable deposits or any minerals within the limits of the location. . . . So far as the portion of the claim included within the exterior limits of the national monument is concerned, no discovery which would defeat the said monument can have been made since the date of the previous hearing in this case, nor do I find that one is claimed to have been made since the former decision in any part of the alleged location."

After and notwithstanding these decisions Cameron asserted an exclusive right to the possession and enjoyment of the tract, as if the lode claim were valid; and he and his co-defendants, who were acting for or under him, continued to occupy and use the ground for livery and other business purposes, and in that and other ways obstructed its use by the public as a part of the reserves. In this situation, and to put an end to what the Government deemed a continuing trespass, purpresture and public nuisance, the present suit was brought.

The courts below ruled that the decisions of the Secretary of the Interior should be taken as conclusively determining the non-mineral character of the land and the absence of an adequate mineral discovery, and also as

showing that the matter before the Secretary was not merely the application for a patent but also the status of the claim,—whether it was valid or was wanting in essential elements of validity, and whether it entitled Cameron to the use of the land as against the public and the Government. As before stated, the defendants complain of that ruling. The objections urged against it are, first, that the Secretary's decisions show that he proceeded upon a misconception of what under the law constitutes an adequate mineral discovery, and, second, that although the Secretary had ample authority to determine whether Cameron was entitled to a patent, he was without authority to determine the character of the land or the question of discovery, or to pronounce the claim invalid.

As to the first objection little need be said. A reading of each decision in its entirety, and not merely the excerpts to which the defendants invite attention, makes it plain that the Secretary proceeded upon the theory that to support a mining location the discovery should be such as would justify a person of ordinary prudence in the further expenditure of his time and means in an effort to develop a paying mine. That is not a novel or mistaken test, but is one which the land department long has applied and this court has approved. *Chrisman* v. *Miller*, 197 U. S. 313, 322.

The second objection rests on the naked proposition that the Secretary was without power to determine whether the asserted lode claim, under which Cameron was occupying and using a part of the reserves to the exclusion of the public and the reserve officers, was a valid claim. We say "naked proposition" because it is not objected that Cameron did not have a full and fair hearing, or that any fraud was practised against him, but only that the Secretary was without any power of decision in the matter. In our opinion the proposition is not tenable.

By general statutory provisions the execution of the

laws regulating the acquisition of rights in the public lands and the general care of these lands is confided to the land department, as a special tribunal; and the Secreraty of the Interior, as the head of the department, is charged with seeing that this authority is rightly exercised to the end that valid claims may be recognized, invalid ones eliminated, and the rights of the public preserved. Rev. Stats., §§ 441, 453, 2478; *United States* v. *Schurz*, 102 U. S. 378, 395; *Lee* v. *Johnson*, 116 U. S. 48, 52; *Knight* v. *United States Land Association*, 142 U. S. 161, 177, 181; *Riverside Oil Co.* v. *Hitchcock*, 190 U. S. 316.

A mining location which has not gone to patent is of no higher quality and no more immune from attack and investigation than are unpatented claims under the homestead and kindred laws. If valid, it gives to the claimant certain exclusive possessory rights, and so do homestead and desert claims. But no right arises from an invalid claim of any kind. All must conform to the law under which they are initiated; otherwise they work an unlawful private appropriation in derogation of the rights of the public.

Of course, the land department has no power to strike down any claim arbitrarily, but so long as the legal title remains in the Government it does have power, after proper notice and upon adequate hearing, to determine whether the claim is valid and, if it be found invalid, to declare it null and void. This is well illustrated in *Orchard* v. *Alexander*, 157 U. S. 372, 383, where in giving effect to a decision of the Secretary of the Interior canceling a preëmption claim theretofore passed to cash entry, but still unpatented, this court said: "The party who makes proofs, which are accepted by the local land officers, and pays his money for the land, has acquired an interest of which he cannot be arbitrarily dispossessed. His interest is subject to state taxation. *Carroll* v. *Safford*, 3 How. 441; *Witherspoon* v. *Duncan*, 4 Wall. 210. The

government holds the legal title in trust for him, and he may not be dispossessed of his equitable rights without due process of law. Due process in such case implies notice and a hearing. But this does not require that the hearing must be in the courts, or forbid an inquiry and determination in the Land Department." And to the same effect is *Michigan Land & Lumber Co.* v. *Rust,* 168 U. S. 589, 593, where in giving effect to a decision of the Secretary canceling a swamp land selection by the State of Michigan theretofore approved, but as yet unpatented, it was said: "It is, of course, not pretended that when an equitable title has passed the land department has power to arbitrarily destroy that equitable title. It has jurisdiction, however, after proper notice to the party claiming such equitable title, and upon a hearing, to determine the question whether or not such title has passed. *Cornelius* v. *Kessel,* 128 U. S. 456; *Orchard* v. *Alexander,* 157 U. S. 372, 383; *Parsons* v. *Venzke,* 164 U. S. 89. In other words, the power of the department to inquire into the extent and validity of the rights claimed against the Government does not cease until the legal title has passed."

True, the mineral land law does not in itself confer such authority on the land department. Neither does it place the authority elsewhere. But this does not mean that the authority does not exist anywhere, for, in the absence of some direction to the contrary, the general statutory provisions before mentioned vest it in the land department. This is a necessary conclusion from this court's decisions. By an Act of 1848 the title to public land in Oregon then occupied as missionary stations, not exceeding six hundred and forty acres in any instance, was confirmed to the several religious associations maintaining those stations, but the act made no provision for determining where the stations were, by whom they were maintained or the area occupied. The land department proceeded to a determination of these questions in the

exercise of its general authority, and in *Catholic Bishop of Nesqually* v. *Gibbon*, 158 U. S. 155, 166, 167, where that determination was challenged as to a particular tract, it was said: "While there may be no specific reference in the act of 1848 of questions arising under this grant to the land department, yet its administration comes within the scope of the general powers vested in that department. . . . It may be laid down as a general rule that, in the absence of some specific provision to the contrary in respect to any particular grant of public land, its administration falls wholly and absolutely within the jurisdiction of the Commissioner of the General Land Office, under the supervision of the Secretary of the Interior. It is not necessary that with each grant there shall go a direction that its administration shall be under the authority of the land department. It falls there unless there is express direction to the contrary." And in *Cosmos Exploration Co.* v. *Gray Eagle Oil Co.*, 190 U. S. 301, 308, where a claimant asserting a full equitable title under the lieu land provision of the Forest Reserve Act of 1897 questioned the authority of the land department to inquire into and pass on the validity of his claim and sought to have it recognized and enforced by a suit in equity, it was said: "There can be, as we think, no doubt that the general administration of the forest reserve act, and also the determination of the various questions which may arise thereunder before the issuing of any patent for the selected lands, are vested in the Land Department. The statute of 1897 does not in terms refer any question that might arise under it to that department, but the subject-matter of that act relates to the relinquishment of land in the various forest reservations to the United States, and to the selection of lands, in lieu thereof, from the public lands of the United States, and the administration of the act is to be governed by the general system adopted by the United States for the administration of

the laws regarding its public lands. Unless taken away by some affirmative provision of law, the Land Department has jurisdiction over the subject." There is in the mineral land law a provision referring to the courts controversies between rival mineral claimants arising out of conflicting mining locations (Rev. Stats., §§ 2325, 2326), but it does not reach or affect other controversies and so is without present bearing. *Creede & Cripple Creek Mining Co.* v. *Uinta Tunnel Mining Co.,* 196 U. S. 337, 356, *et seq.*

It is rightly conceded that in the case of a conflict between a mining location and a homestead claim the department has authority to inquire into and determine the validity of both and, if the mining location be found invalid and the homestead claim valid, to declare the former null and void and to give full effect to the latter; and yet it is insisted that the department is without authority, on a complaint preferred in the public interest, to inquire into and determine the validity of a mining location, and, if it be found invalid, to declare it of no effect and recognize the rights of the public. We think the attempted distinction is not sound. It has no support in the terms of the mineral land law, is not consistent with the general statutory provisions before mentioned, and if upheld would encourage the use of merely colorable mining locations in the wrongful private appropriation of lands belonging to the public.

Instances in which this power has been exercised in respect of mining locations are shown in the *Yard Case,* 38 L. D. 59, and the *Nichols-Smith Case* (on rehearing), 46 L. D. 20; instances in which its exercise has received judicial sanction are found in *Lane* v. *Cameron,* 45 App. D. C. 404, and *Cameron* v. *Bass,* 19 Arizona, 246; and an instance in which its existence received substantial, if not decisive, recognition by this court is found in *Clipper Mining Co.* v. *Eli Mining Co.,* 194 U. S. 220, 223, 234.

The argument is advanced that the department necessarily is without authority to pronounce a mining location invalid, because it has within itself no means of executing its decision, such as dispossessing the locator. But this is not a proper test of the existence of the authority, for the department is without the means of executing most of its decisions in the sense suggested. When it issues a patent it has no means of putting the grantee in possession, and yet its authority to issue patents is beyond question. When it awards a tract to one of two rival homestead claimants it has no means of putting the successful one in possession or the other one out, and yet its authority to determine which has the better claim is settled by repeated decisions of this court. And a similar situation exists in respect of most of the claims or controversies on which the department must pass in regular course. Its province is that of determining questions of fact and right under the public land laws, of recognizing or disapproving claims according to their merits and of granting or refusing patents as the law may give sanction for the one or the other. When there is occasion to enforce its decisions in the sense suggested, this is done through suits instituted by the successful claimants or by the Government, as the one or the other may have the requisite interest.

Whether the tract covered by Cameron's location was mineral and whether there had been the requisite discovery were questions of fact, the decision of which by the Secretary of the Interior was conclusive in the absence of fraud or imposition, and none was claimed. *Catholic Bishop of Nesqually* v. *Gibbon, supra; Burfenning* v. *Chicago, St. Paul, etc., Ry. Co.*, 163 U. S. 321, 323. Accepting the Secretary's findings that the tract was not mineral and that there had been no discovery, it is plain that the location was invalid, as was declared by the Secretary and held by the courts below.

Of other complaints made by the defendants, it suffices to say that, in our opinion, the record shows that the Government was entitled to the relief sought and awarded.

*Decree affirmed.*