### EDENBORN v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. March 4, 1925.)

(Nos. 4456–4458.)

1. **Public lands** ⬅️79—**Cultivation by homestead settler of other public lands held not to affect his homestead right.**

That a homestead settler actually occupied and cultivated but one legal subdivision of the land claimed by him, but occupied and cultivated other adjoining public lands, it being publicly known what land he claimed as his homestead, does not affect the validity of his claim, within Act Feb. 8, 1887, excepting land occupied by actual settlers from railroad grant.

2. **Public lands** ⬅️79—**Defendant held liable for timber cut on land awarded to homestead claimant.**

Defendant, claiming title under a railroad grant, held liable for the value of timber cut from land which had previously been held by the Land Department to have been excluded from the grant and awarded to a homestead claimant.

3. **Public lands** ⬅️106(1)—**Decisions of Land Department on questions of fact conclusive.**

Decisions of the officers of the Land Department on controverted questions of fact falling within the scope of their authority are conclusive on the courts, in the absence of fraud or imposition.

Appeal from the District Court of the United States for the Western District of Louisiana; Rufus E. Foster, Judge.

Three suits in equity by the United States against William Edenborn. Decrees for the United States, and defendant appeals. Affirmed.

E. H. Randolph, of Shreveport, La. (Wise, Randolph, Rendall & Freyer, of Shreveport, La., on the brief), for appellant.

Robert A. Hunter, Sp. Asst. Atty. Gen., for the United States.

Before WALKER and BRYAN, Circuit Judges, and HUTCHESON, District Judge.

WALKER, Circuit Judge. These are appeals from decrees in three separate suits, adjudging that the appellant held in trust for a named person, his heirs or assigns, the title to described land, that appellant execute and deliver a deed to such person, his heirs, or assigns, conveying all right, title, or interest of appellant in or to that land, and that appellant pay to the plaintiff in the suit, the United States of America, the appellee here, for the use and benefit of such person, his heirs or assigns, the ascertained and stated value of timber cut upon the several tracts of land, with interest on such amount. Each of the suits was similar to those decided by the Supreme Court and reported in United States v. New Orleans Pacific Ry. Co., 248 U. S. 507, 39 S. Ct. 175, 63 L. Ed. 388, in that it asserted rights of a homestead claimant of land under the Act of February 8, 1887, c. 120, 24 Stat. 391; the alleged homestead claimant in one of the cases being Andrew Taylor, such claimant in another of the cases being E. L. Martin, and such claimant in the remaining case being James M. Collins. The several cases will be referred to respectively by the names mentioned.

Section 2 of the above-mentioned act, entitled "An act to declare a forfeiture of lands granted to the New Orleans, Baton Rouge and Vicksburg Railroad Company, to confirm title to certain lands, and for other purposes," contained the following: "Provided, that all said lands occupied by actual settlers at the date of the definite location of said road and still remaining in their possession or in possession of their heirs or assigns

shall be held and deemed excepted from said grant and shall be subject to entry under the public land laws of the United States."

[1] The land involved in the Taylor suit, the W. ½ of the S. E. ¼ and S. E. ¼ of S. W. ¼ of section 33, township 12 north, of range 7 west, Louisiana meridian, was patented to the New Orleans Pacific Railway Company on March 3, 1885. At that time, and at the time of the definite location of the road, November 17, 1882, Taylor actually occupied and cultivated the southwest ¼ of the northeast ¼ of said section, and claimed that land and also the above-mentioned adjoining land. In December, 1888, Taylor filed his application to enter under the homestead laws all of the above-mentioned land. His application was contested by the railway company. Taylor's claim was sustained by the register and receiver of the local land office, and that decision was approved by the Commissioner of the General Land Office. On January 3, 1888, the patentee deeded the land in controversy to Charles J. Easton, through whom the appellant claimed. In 1906 appellant sold the timber on the land in dispute at the price of $3 per 1,000 feet. To defeat the claim asserted in the Taylor suit the appellant relied on evidence to the effect that at the time of the definite location of the railroad Taylor did not occupy or use the land in dispute, but was then occupying or using land in other subdivisions contiguous to the above-mentioned one, which he was then actually occupying and cultivating.

The facts being as above stated, at the time of the issue of the patent to the railway company, Taylor was entitled to embrace in his homestead claim the subdivisions in dispute, which are contiguous to the 40-acre subdivision which he then actually occupied and cultivated, if the existence and extent of his claim were then so disclosed as to charge the patentee with notice of the nature and extent of his claim. St. Paul, Minneapolis & Manitoba Ry. Co. v. Donohue, 210 U. S. 21, 28 S. Ct. 600, 52 L. Ed. 941; United States v. New Orleans Pacific Ry. Co., supra. Taylor, at the time of the issue of the patent to the railway company, being in possession of part of the 160 acres he claimed, and the existence and extent of his claim being then well known to the people of the neighborhood, the validity of his claim as to any part of the land embraced therein was not impaired by the fact that he used or cultivated public land in subdivisions adjoining the one on which he lived, other than the ones which were embraced in his openly asserted claim. The fact that he used or cultivated public land which he did not claim as a part of his homestead did not deprive him of the right to any part of that which was embraced in his homestead claim.

[2] When the appellant sold the timber on the land in dispute in the Taylor case, he was not entitled to the land or the timber thereon. By such sale the appellant incurred liability for the value of the timber sold to the person or persons who were entitled thereto.

In the Martin case appellant makes no contention, except as to his liability for the value of timber taken from the land, which was sold by him. For reasons above indicated, appellant is not exempt from liability for so disposing of property to which he was not entitled.

The land involved in the Collins suit was patented to the railway company on March 3, 1885. The appellant claimed under John Bennetto, to whom the railway company deeded that land on June 13, 1892. Prior to the execution of that deed, Collins filed his homestead claim to that land, the railway company contested that claim, the register and receiver rendered a decision in favor of Collins, and that decision was affirmed by the Commissioner of the General Land Office. The written communication of the Commissioner, evidencing his decision, contains the following:

"The proof shows that Collins purchased the improvements of one Richardson, a former settler upon the land, in the fall of 1882, and moved thereon with his family, where he has continued to reside, cultivating and improving the same. As shown by the testimony, Collins occupies the land as assignee of Richardson, who is shown to have been an actual settler upon the land and occupant of the same at the date of definite location of the road. He therefore comes clearly within, and his claim is confirmed by, the second section of the act of 1887 aforesaid."

As the legal title to the land in dispute was in the railway company when Collins filed his homestead entry, when the railway company contested that claim, and when that claim was finally sustained, the position of the appellant, who claims under one who purchased from the railway company after the allowance of the homestead claim, is no better than that of the railway company.

[3] Decisions of the officers of the Land Department on controverted questions of fact falling within the scope of their authority are conclusive on the courts, in the absence of fraud or imposition; judicial inquiry as to the action of the officials of the Land De-

partment in reference to the claim passed on by them being limited to determining whether the award made by them resulted from clear error of law. Johnson v. Riddle, 240 U. S. 467, 36 S. Ct. 393, 60 L. Ed. 752; Cameron v. United States, 252 U. S. 450, 40 S. Ct. 410, 64 L. Ed. 659. The above-quoted decision as to the facts of possession upon which the allowance of the homestead claim of Collins was based was such a decision on a controverted question of fact. The appellant is not entitled to have the question of fact so decided reopened. The facts so found warranted the allowance of the homestead claim in question.

No error is shown by the record in any of the three cases. The judgments are affirmed.