TULARE COUNTY et al., Plaintiffs,

v.

George W. BUSH et al., Defendants.

No. Civ.A.00–2560(RMU).

United States District Court, District of Columbia.

Sept. 28, 2001.

structures, and other objects of historic or scientific interest." *See* 16 U.S.C. § 431.

The plaintiffs in this action are various individuals and groups that have interests in the use of the Sequoia National Forest land within the boundaries of the Monument. The plaintiffs filed this action against the defendants, President Clinton and various other entities of the United States government, seeking declaratory relief. The plaintiffs allege that the Proclamation and the Forest Service's current implementation of the Proclamation violate the Antiquities Act, the National Forest Management Act ("NFMA"), 16 U.S.C. § 1600 *et seq.,* the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.,* the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.,* the plaintiffs' rights, and the Property Clause of the Constitution, U.S. CONST. art. IV, § 3, cl. 2. This matter is before the court on the defendants' motion to dismiss for lack of subject-matter jurisdiction or, alternatively, for failure to state a claim on which relief can be granted. For the reasons that follow, the court will grant the defendants' motion to dismiss.

Gary Griffin Stevens, Saltman & Stevens, P.C., Washington, DC, for Plaintiffs.

Martin Lalonde, Ann D. Navaro, U.S. Department of Justice Environment & Natural Resources Division, Washington, DC, Michael A. Gheleta, U.S. Department of Justice Environment & Natural Resources Division, Denver, CO, for Defendants.

Michael Sherwood, Earthjustice, Oakdale, CA, Jeremy Todd Hutchins, Earth Justice Washington, DC, for Environmental Movants.

Raissa S. Lerner, California Attorney General's Office, Oakland, CA, for Movant State of California.

## MEMORANDUM OPINION

URBINA, District Judge.

### GRANTING THE DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

On April 15, 2000, pursuant to the Antiquities Act of 1906, President Clinton issued a proclamation establishing the Giant Sequoia National Monument ("the Monument"). Proclamation Number 7295 ("the Proclamation") declared that the Monument would encompass 327,769 acres of land in the Sequoia National Forest in southern central California. According to the Antiquities Act, the President may, "in his discretion," designate federal land as a national Monument when it includes "historic landmarks, historic and prehistoric

### II. BACKGROUND

On April 15, 2000, President Clinton issued a proclamation establishing the Giant Sequoia National Monument pursuant to the Antiquities Act of 1906. *See* 16 U.S.C. § 431; 65 Fed.Reg. 24095 (2000). The Proclamation states that the Monument encompasses "the smallest area compatible with the proper care and management of the objects to be protected," 327,769 acres of land located within the Sequoia National Forest in southern central California. *See* 65 Fed.Reg. at 24097. The Proclamation reserves this land for the purpose of protecting a variety of objects of historic and scientific interest such as: "rich and varied landscape," "magnificent groves of tower-

ing giant sequoias," "gigantic domes," and "archeological sites recording Native American occupation and adaptations." *See* 65 Fed.Reg. at 24095–24097. According to the Proclamation, "the monument is rich in rare plants and is home to more than 200 plant species endemic to the southern Sierra Nevada mountain range...." *See id.*

Regarding the use of land included in the Monument, the Proclamation provides for "continued public and recreational access and use consistent with the purposes of the monument." *See id.* at 24097. The Proclamation states that "[t]he establishment of this monument is subject to valid existing rights." *See id.* at 24097. The Proclamation also provides for the continuing existence of timber sales under contract on the date of the Proclamation and states that the Proclamation will not affect existing special use authorizations. *See id.* at 24097–98. As to the management of the Monument, the Forest Service shall manage the Monument, "pursuant to applicable legal authorities, to implement the purposes and provisions of this proclamation." *Id.* at 24097. Finally, the Proclamation gives the Secretary of Agriculture three years from the date of the Proclamation to develop an official management plan for the Monument. *See id.*

Tulare County, one of the plaintiffs, is a county in the State of California that holds land near and within the Monument. *See* Compl. ¶ 12. Other plaintiffs include Sierra Forest Products, High Desert Multiple–Use Coalition, Kent Duysen, Sierra Nevada Access Multiple–Use & Stewardship Coalition, Sugarloafers Snowmobile Association, Montecito–Sequoia Camp, and Navelencia Resource Conservation District. *See* Compl. ¶¶ 12–77. Generally speaking, the plaintiffs use the Monument area for business and recreational purposes. *See id.*

Two of the plaintiffs, Sierra Forest Products and High Desert Multiple–Use Coalition were involved in an administrative appeal of the Land and Resource Plan, the Forest Service's management plan for the Sequoia National Forest. *See* Compl. ¶¶ 87–89; Pls.' Opp'n at 39. The Forest Service adopted this Land and Resource Plan in 1988 to preserve old-growth Giant Sequoias. *See* Compl. ¶ 87. In 1990, these plaintiffs, other appellants of the management plan, and the Forest Service entered into a Mediated Settlement Agreement ("MSA") with the Forest Service. *See* Compl. ¶ 89.

On October 25, 2000, the plaintiffs, seeking declaratory relief, filed a complaint, alleging nine claims: (1) the Proclamation violates the Antiquities Act because the alleged objects of historic and scientific interest have not been identified with reasonable specificity; (2) the Proclamation violates the Antiquities Act because it designates non-qualifying objects as the basis for the Monument; (3) the Proclamation violates the Antiquities Act because the size of the Monument is not confined to the smallest area compatible; (4) the Proclamation violates the Antiquities Act because it increases the likelihood of harm to any objects of alleged historic and scientific interest within the Monument; (5) the Proclamation violates the Property Clause of the Constitution; (6) the Proclamation violates the NFMA by withdrawing land from the National Forest System; (7) the current management by the Forest Service of the Monument is in violation of the NFMA and its forest planning regulations; (8) the current management of the Monument is in violation of the NEPA; and (9) the Proclamation violates valid existing rights, including those contained in the Mediated Settlement Agreement. *See* Compl. ¶¶ 131–204.

The plaintiffs allege that the Monument is physically over-inclusive. *See* Pls.' Opp'n at 1. According to the plaintiffs, the "Giant Sequoia groves constitute only about 20,000 acres or 6% of Monument area." *See id.* Also, the plaintiffs charge that the Forest Service's current management of the Monument area significantly decreases timber sales, recreational uses, and rights of access to the Monument. *See* Compl. ¶¶ 108–14.

On March 23, 2001, the defendants filed a motion to dismiss under both Federal Rule of Civil Procedure 12(b)(1), lack of jurisdiction, and Rule 12(b)(6), failure to state a claim on which relief could be granted. *See* Defs.' Mot. to Dismiss ("Mot. to Dismiss") at 1.

## III. ANALYSIS

### A. Legal Standard for Motion to Dismiss

In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court must accept all the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g., Pitney Bowes v. United States Postal Serv.*, 27 F.Supp.2d 15, 19 (D.D.C.1998) (Urbina, J.). On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. *See District of Columbia Retirement Bd. v. United States*, 657 F.Supp. 428, 431 (D.D.C.1987). In evaluating whether subject-matter jurisdiction exists, the court must accept all uncontroverted, well-pleaded facts as true and attribute all reasonable inferences to the plaintiffs. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overturned on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Court is not required, however, to accept inferences un-supported by the facts alleged or legal conclusions that are cast as factual allegations. *See, e.g., Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990).

█ Moreover, the court need not limit itself to the allegations of the complaint. *See Hohri v. United States*, 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds by* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Rather, the court may consider such materials outside the pleadings as it deems appropriate to determine whether it has jurisdiction in the case. *See Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C.Cir.1992).

█ For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide a short and plain statement of the claim and the grounds on which it rests. *See* Fed.R.Civ.P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. *See* Fed.R.Civ.P. 12(b)(6); *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. The plaintiff need not plead the elements of a prima-facie case in the complaint. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C.Cir.2000). Thus, the court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C.Cir.1996). Moreover, the court should draw all reasonable inferences in the nonmovant's favor. *See Judicial Watch, Inc. v. Clinton*, 880 F.Supp. 1, 7 (D.D.C.1995).

## B. The Court Dismisses Counts One Through Four Because the Proclamation Does Not Violate the Antiquities Act

In Counts One through Four, the plaintiffs allege that the Proclamation violates the Antiquities Act in various ways. *See* Compl. ¶¶ 131–60. Reviewing the Proclamation on its face, this court determines that there is no set of facts on which the plaintiffs could demonstrate that the Proclamation violates the Antiquities Act. Consequently, the court dismisses Counts One through Four pursuant to Rule 12(b)(6).

### 1. The Antiquities Act

The Antiquities Act authorizes the President of the United States:

> in his discretion, to declare by public proclamation historic landmarks . . . and other objects of historic and scientific interest that are situated upon lands owned or controlled by the Government of the United States to be national monuments, and may reserve as a part thereof parcels of land, the limits of which in all cases shall be confined to the smallest area compatible with the proper care and management of the objects to be protected.

16 U.S.C. § 431. The Antiquities Act sets forth no means for reviewing a President's proclamation other than specifying that a President has discretion in his or her use of the Act. *See id.*

Presidents have used the Antiquities Act to declare national monuments more than 120 times and in at least 27 states. *See Esplin v. Clinton,* No. 00–0148 at 6 (D.Ariz. Nov. 20, 2000) (Defs.' Ex. 2)

("Esplin").[1] Denying parties' claims that the use of the Antiquities Act should be limited, the Supreme Court has explained that "[t]he act under which the President proceeded empowered him to establish reserves embracing 'objects of historic or scientific interest.'" *Cameron v. United States,* 252 U.S. 450, 455, 40 S.Ct. 410, 64 L.Ed. 659 (1920); *see also Cappaert v. United States,* 426 U.S. 128, 141–142, 96 S.Ct. 2062, 48 L.Ed.2d 523 (1976); *United States v. California,* 436 U.S. 32, 36, 98 S.Ct. 1662, 56 L.Ed.2d 94 (1978).

 Courts are severely limited in their review of congressionally authorized presidential actions:

> It has long been held that where Congress has authorized a public officer to take some specified legislative action[,] when in his judgment that action is necessary or appropriate to carry out the policy of Congress, the judgment of the officer as to the existence of the facts calling for that action is not subject to review.

*United States v. George S. Bush & Co.,* 310 U.S. 371, 380, 60 S.Ct. 944, 84 L.Ed. 1259 (1940) (internal citations omitted). Considering that the judgment of any public officer taking legislative action cannot be reviewed by the courts, the court deems it highly logical that presidential decisions, made pursuant to a statute that provides the President with discretion, are also not reviewable. In *George S. Bush & Co.,* the Supreme Court reviewed the President's 1934 proclamation increasing the duty on canned clams imported from Japan pursuant to the Tariff Act of 1930. *See id.* at

---

**1.** The use of the Antiquities Act has been challenged six times and courts have upheld the use of the Antiquities Act each time. *See Esplin* at 6 and n. 1; see, e.g., *United States v. California,* 436 U.S. 32, 98 S.Ct. 1662, 56 L.Ed.2d 94 (1978); *Cameron v. United States,* 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659 (1920); *Wyoming v. Franke,* 58 F.Supp. 890 (D.Wyo.1945); *Cappaert v. United States,* 426 U.S. 128, 96 S.Ct. 2062, 48 L.Ed.2d 523 (1976); *Anaconda Copper Co. v. Andrus,* 14 ERC 1853 (D.Alaska 1980) (Defs.' Ex. 3); *Alaska v. Carter,* 462 F.Supp. 1155 (D.Alaska 1978).

375, 60 S.Ct. 944; 19 U.S.C. § 1001 *et seq.* The Court explained that probing the reasoning of the President in issuing this proclamation would be an invasion of the legislative and executive domains. *See id.* at 380, 60 S.Ct. 944.

## 2. Analysis

■ While this court can evaluate whether President Clinton exercised his discretion in accordance with the standards of the Antiquities Act, this court cannot review the President's determinations and factual findings, as the plaintiffs suggest. To do so would invade the legislative and executive domains because Congress has directed that the President, "in his discretion," make these findings. *See George Bush & Co.,* at 380, 60 S.Ct. 944; 16 U.S.C § 431. Accordingly, this court limits its examination to the face of the Proclamation. *See Cameron,* 252 U.S. at 455–56, 40 S.Ct. 410; *Cappaert,* 426 U.S. at 141–142, 96 S.Ct. 2062; *Anaconda Copper Co. v. Andrus,* 14 ERC 1853, 1854 (D.Alaska 1980) (Defs.' Ex. 3).

■ Counts One and Two assert that President Clinton violated the Antiquities Act by not reasonably identifying objects of historic and scientific interest and by designating non-qualifying objects as the basis for the Monument. *See* Compl. ¶¶ 131–44. In contrast, the Proclamation begins by stating, "[t]he rich and varied landscape of the Giant Sequoia National Monument holds a diverse array of scientific and historic resources." *See* 65 Fed. Reg. at 24095. The Proclamation specifies, "[o]nly one other North American tree species ... holds such lengthy and detailed chronologies of past changes and events." *See id.* In addition, "the monument is rich in rare plants," "rare amphibians," and "[a]rchaeological sites ... are found in the monument." *See id.* at 24095–96. In sum, the Proclamation, on its face, describes with specificity the objects of historic and scientific interest to be included in the Monument and does not designate non-qualifying objects.

Count Three alleges that the Proclamation violates the Antiquities Act because the size of the Monument is not confined to the smallest area compatible with the proper care and management of the objects to be protected. *See* Compl. ¶¶ 145–53. On a similar note, Count Four asserts that the Proclamation increases the likelihood of harm to objects of historic and scientific interest within the Monument. *See id.* ¶¶ 154–60. In contrast, however, the Proclamation addresses the reason for the size of the Monument, the risk of wildfire, and the need to protect the objects of historic and scientific interest. *See* 65 Fed.Reg. at 24095–97. As required by the Antiquities Act, the Proclamation specifically states that the land reserved for the Monument consists of "approximately 327,769 acres, which is the smallest area compatible with the proper care and management of the objects to be protected...." *See id.* at 24097.

Finally, a facial review of the Proclamation leads the court to determine that the plaintiffs can prove no set of facts in support of their claims that could entitle them to relief. *See George S. Bush & Co.,* 310 U.S. at 380–81, 60 S.Ct. 944; *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. Consequently, the court dismisses Counts One through Four.

## C. The Court Dismisses Count Five Because the Proclamation Does Not Violate the Property Clause of the Constitution

In Count Five, the plaintiffs allege that the Antiquities Act and the Proclamation violate the Property Clause of the Constitution. *See* Compl. ¶¶ 161–68. The court disagrees.

### 1. The Property Clause

 The Property Clause states: "The Congress shall have Power to dispose of and make all needful Rules and regulations respecting the Territory or other Property belonging to the United States." U.S. CONST. art. IV, § 3, cl. 2. The Supreme Court has read the Property Clause expansively, noting that "[t]he power over the public land thus entrusted to Congress is without limitations." *See United States v. San Francisco,* 310 U.S. 16, 29, 60 S.Ct. 749, 84 L.Ed. 1050 (1940). The Court has also explained that when delegating authority, Congress must provide standards to guide the authorized action such that one reviewing the action could recognize whether the will of Congress has been obeyed. *See Yakus v. United States,* 321 U.S. 414, 425–26, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

### 2. Analysis

In this case, the plaintiffs claim that "Congress has ceded its Constitutional power 'to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States' by delegating unlimited discretion to the President." *See* Compl. ¶ 166. The plaintiffs allege that the Proclamation violates the non-delegation doctrine and the Property Clause because it is "without meaningful limitation." *See id.* ¶¶ 167–68.

 On the contrary, the Antiquities Act establishes clear standards and limitations. The Antiquities Act details the types of objects that can be included in monuments and a method for determining the size of monuments. *See* 16 U.S.C. § 431. Even if standards and limitations are somewhat broad, "Congress does not violate the Constitution merely because it legislates in broad terms, leaving a certain degree of discretion to executive or judicial actors." *Touby v. United States,* 500 U.S. 160, 165, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991). Therefore, the Antiquities Act represents a proper delegation of congressional authority to the President under the Property Clause.

In addition, as described above, President Clinton's Proclamation has meaningful limitations and follows the standards delineated by Congress in the Antiquities Act. *See* subsection "A" *supra;* 65 Fed. Reg. 24095–97. Accordingly, the Proclamation also does not violate the Property Clause of the Constitution. In conclusion, the court dismisses Count Five.

## D. The Court Dismisses Count Six Because the Proclamation Does Not Violate the National Forest Management Act

In Count Six, the plaintiffs allege that the Proclamation violates NFMA by wrongfully withdrawing land from the National Forest System. *See* Compl. ¶¶ 169–75; 16 U.S.C. §§ 472(a) and 1600 *et seq.* This Count fails to state a claim on which relief could be granted because the Proclamation does not remove the Monument land from the National Forest System.

### 1. The National Forest Management Act

 The National Forest Management Act of 1976 states that no land reserved from the public domain as a national forest can "be returned to the public domain except by an Act of Congress." *See* 16 U.S.C. § 1609(a). The Supreme Court has defined public domain as referring to land available for sale or settlement under homestead laws, or other types of dispositions pursuant to land laws. *See Hagen v. Utah,* 510 U.S. 399, 412, 114 S.Ct. 958, 127 L.Ed.2d 252 (1994). NFMA also requires the Secretary of Agriculture to manage the Forest System lands, ensuring that the

uses of these lands comply with other statutes. *See* 16 U.S.C. § 1600 *et seq.*

In 1978, after the enactment of NFMA, the Supreme Court commented on the use of the Antiquities Act: "A reservation under the Antiquities Act means no more than that the land is shifted from one federal use, and perhaps from one federal managing agency, to another." *California*, 436 U.S. at 40, 98 S.Ct. 1662. The Court explained that the Antiquities Act gives the President discretion to create a national monument and reserve land for its use. *See id.* Furthermore, the Court specified that the terms of the Antiquities Act include federal lands "owned or controlled by the United States that may already have been designated for a specific management purpose." *See id.*

### 2. Analysis

 In creating the Giant Sequoia National Monument, President Clinton did not withdraw land from the national forest system, though he did withdraw land from disposition under public land laws, such as the sale and leasing of the land. *See* 65 Fed.Reg. at 24096. The Proclamation establishes that the Monument land will have dual status as a monument and a part of the Sequoia National Forest. *See id.* at 24098. In addition, the Proclamation explicitly states that the Secretary of Agriculture, through the Forest Service, shall manage the Monument and the underlying forest pursuant to applicable legal authorities. *See id.* at 24097; 16 U.S.C. § 1600 *et seq.*

Enacted by Congress 70 years after the Antiquities Act, NFMA does not limit the President's authority under the Antiquities Act by prohibiting proclamations that reserve land in national forests as monuments.[2] The Proclamation complies with NFMA because it does not withdraw land from the National Forest System, the Secretary of Agriculture will continue to manage the land in question, and it states that the management of the Monument must comply with existing laws. *See* 65 Fed. Reg. 24095; 16 U.S.C. § 1600 *et seq.*

Count Six fails to state a claim on which relief could be granted because the Proclamation in no way violates NFMA.

### E. The Court Dismisses Counts Seven and Eight Because the APA and NEPA Do Not Apply to Presidential Actions

The court dismisses Counts Seven and Eight for lack of subject-matter jurisdiction because the Counts wrongly allege a right to judicial review pursuant to the APA and the NEPA.

### 1. The Administrative Procedure Act and the National Environmental Policy Act

The Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, provides: "A person suffering legal wrong because of *agency action*, or adversely affected or aggrieved by *agency action* within the meaning of a relevant statute, is entitled to judicial review." 5 U.S.C. § 702 (emphasis added). This provision requires a complainant to "identify some [particular] 'agency action,'" and "the 'agency action' in question must be 'final agency action.'" *Lujan v. National Wildlife Fed'n.*, 497 U.S. 871, 882, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (internal citations omitted). The National

---

**2.** Had Congress intended to limit Presidents' uses of the Antiquities Act, it could have done so as it did in the Weeks Act. *See* 16 U.S.C. § 521. With the Weeks Act, Congress required that certain lands be permanently reserved and administered as national forest lands. *See id.* This type of explicit language is absent from section 1609 of NFMA. In no way does section 1609 demonstrate a congressional intent to repeal the Antiquities Act as it applies to national forest lands.

Environmental Policy Act also applies specifically to federal agencies, making no mention of presidential actions. *See* 42 U.S.C. § 4321 *et seq.* In contrast, when Congress has imposed duties on the President, they have specifically mentioned that office. *See Alaska v. Carter,* 462 F.Supp. 1155, 1160 (D.Alaska 1978).

■■■■ A court has subject-matter jurisdiction to review an agency action under the APA only when a final agency action exists. *See* 5 U.S.C. § 704. Because the President is not a federal agency within the meaning of the APA, presidential actions are not subject to review pursuant to the APA. *See Dalton v. Specter,* 511 U.S. 462, 470, 114 S.Ct. 1719, 128 L.Ed.2d 497 (1994); *Franklin v. Massachusetts,* 505 U.S. 788, 800–01, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992); *Armstrong v. Bush,* 924 F.2d 282, 289 (D.C.Cir.1991); 5 U.S.C. §§ 701(b)(1), 551(1). Applying similar logic, the President is not a federal agency for the purposes of NEPA. *See Alaska,* 462 F.Supp. at 1159–60; *Armstrong,* 924 F.2d at 289; *cf.Franklin,* 505 U.S. at 800–01, 112 S.Ct. 2767. Consequently, "the President is not subject to the impact statement requirement of NEPA when exercising his power to proclaim national monuments under the Antiquities Act." *See id.*

■■■■ On a separate point, courts will deem agency action final if (1) the action "mark[s] the 'consummation' of the agency's decisionmaking process," and (2) the action determines "rights or obligations" or resolves issues "from which legal consequences ... flow." *Bennett v. Spear,* 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (internal citations omitted). The D.C. Circuit has explained further that final agency action must not be of a tentative or interlocutory nature. *See*

*Appalachian Power Co. v. E.P.A.,* 208 F.3d 1015, 1022 (D.C.Cir.2000).

### 2. Analysis

■■■■ In Count Seven, the plaintiffs charge that the Proclamation leaves the Monument within the National Forest System, and therefore the Monument land is subject to the NFMA planning and administrative appeal process.[3] *See* Compl. ¶ 180. In both Counts Seven and Eight, the plaintiffs seek relief pursuant to the APA, alleging that the Forest Service's management of the Monument violates the NFMA (Count Seven) and the NEPA (Count Eight). *See* Compl. ¶¶ 176–92. Also, in both Counts, the plaintiffs specifically refer to the Forest Service's current management of the Monument, which is occurring pursuant to the Clinton Proclamation, until the Secretary of Agriculture devises a formal plan. *See* Compl. ¶¶ 181, 184, 187, 189; 65 Fed.Reg. at 24097. A memorandum from the Forest Supervisor and a "background document" allegedly govern the current management. *See* Compl. ¶¶ 181, 189. The plaintiffs do not allege that any of the management changes that have been instituted are not mandated by the Proclamation. *See generally* Compl.

Counts Seven and Eight both request judicial review pursuant to the APA. These Counts fail to allege jurisdiction, however, because the Forest Service is merely carrying out directives of the President, and the APA does not apply to presidential action. *See Franklin,* 505 U.S. at 800–01, 112 S.Ct. 2767; *Armstrong,* 924 F.2d at 298. Any argument suggesting that this action is agency action would suggest the absurd notion that all presidential actions

---

**3.** While the plaintiffs' allegations and arguments in and pertaining to Count Six focus on the assertion that the Proclamation *removes* lands from the Sequoia National Forest, the plaintiffs' allegations in Count Seven seem to contradict this notion.

must be carried out by the President him or herself in order to receive the deference Congress has chosen to give to presidential action. *See generally id.* The court refuses to give the term "presidential action" such a confusing and illogical interpretation. Using this same logic, Count Eight also fails in its claim pursuant to NEPA because NEPA requires agency action, and the action in question is an extension of the President's action. *See Alaska,* 462 F.Supp. at 1159–60.

■ Even if the action were agency action, this court could not review it under the APA because it is tentative, interlocutory, and therefore not final action. *See Appalachian Power Co.,* 208 F.3d at 1022. In the Proclamation, the President directs the Secretary of Agriculture to devise a management plan for the Monument within three years, with the advice of a scientific advisory board. *See* 65 Fed.Reg. at 24097. Accordingly, the current management plan is merely a temporary measure acting on the President's immediate requests and managing the forest until the agency devises a management plan. *See* Compl. ¶¶ 176–92; Defs.' Ex. 7, Pls.' Ex 2.

In sum, as the APA only applies to final agency action, and NEPA only applies to agency action, Counts Seven and Eight fail because the court has no subject-matter jurisdiction over the allegations contained therein.

### F. The Court Dismisses Count Nine Because the Proclamation Does Not Violate Existing Rights and the Matter Is Not Ripe for Review

In Count Nine, the plaintiffs allege that the Proclamation and the Forest Service's management of the lands within the boundaries of the Monument violate plaintiff's valid existing rights as created by the

Mediated Settlement Agreement executed in 1990. *See* Compl. ¶¶ 193–204; Defs.' Ex. 8. The court dismisses this Count because the Proclamation does not violate existing rights and because the current management of the Monument is not ripe for judicial review.[4]

#### 1. The Proclamation Does Not Violate Existing Rights

On its face, the Proclamation preserves existing rights by broadly asserting that "[t]he establishment of this monument is subject to valid existing rights." 65 Fed. Reg. at 24097. More specifically, the Proclamation provides for the continuing existence of uses such as timber sales, water rights, and grazing permits under contract or reserved as of the date of the Proclamation. *See id.* at 24097–98. The Proclamation also states that it will not affect existing special use authorizations. *See id.* at 24098. Given the plain language of the Proclamation, the plaintiffs fail to state a claim with regard to the Proclamation.

#### 2. The Current Management of the Monument Is Not Ripe for Judicial Review

In their complaint, the plaintiffs also raise the possibility that the Forest Service's current implementation of the Proclamation violates existing rights. *See* Compl. ¶¶ 202, 204. These claims, however, are not ripe for judicial review.

■ The test for ripeness requires a court to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration," *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). With respect to the "fitness for judicial decision" prong, a

---

4. Because the Proclamation recognizes existing rights, the court need not decide whether the M.S.A. § creates valid existing rights for the plaintiffs who were party to the MSA.

claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Products Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). Similarly, with respect to the "hardship to the parties" prong, an abstract harm is not sufficient; there must be an immediate harm with a "direct effect on the day-to-day business of the plaintiffs." *Texas*, 523 U.S. at 301, 118 S.Ct. 1257 (quoting *Abbott Labs.*, 387 U.S. at 152, 87 S.Ct. 1507) (internal citations omitted).

■ The plaintiffs cannot demonstrate ripeness with respect to their claim that the current management of the Monument violates their rights because the Secretary of Agriculture has not yet implemented the final management plan called for in the Proclamation. *See Ohio Forestry Association, Inc., v. Sierra Club et al.*, 523 U.S. 726, 732–34, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998). In addition, the plaintiffs have not pled in their complaint that any interim plan is causing them specific, imminent and certain harm. *See id.* at 738, 118 S.Ct. 1665. Therefore, the court dismisses Count Nine.

### IV. CONCLUSION

For all these reasons, the court grants the defendants' motion to dismiss. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously executed and issued this 28th day of September, 2001.

### ORDER

#### GRANTING THE DEFENDANTS' MOTION TO DISMISS

For the reasons stated in this court's Memorandum Opinion separately and con-temporaneously executed and issued this 28th day of September, 2001, it is

**ORDERED** that the defendants' motion to dismiss is **GRANTED;** and it is

**FURTHER ORDERED** that the motions to intervene and the related submissions are **DENIED** as moot; and it is

**ORDERED** that the motion to appear *pro hac vice* is **DENIED** as moot.

**SO ORDERED.**